## THE CITY OF SALEM

*v.*

## THE LANE & BODLEY COMPANY.

*Opinion filed April 18, 1901.*

1. MECHANICS' LIENS—*one furnishing engine for electrict light plant is a contractor.* One who furnishes, by contract with the owner of a tract of land, an engine to be placed in an electric light plant which such owner is erecting on the land in pursuance of a contract with a city, whereby he is to sell the land and plant, when completed, to the city, is a contractor, within the meaning of section 1 of the Mechanic's Lien act of 1895.

2. SAME—*when notice of claim for lien is unnecessary.* Under section 7 of the Mechanic's Lien act of 1895 (Laws of 1895, p. 229,) a contractor need not file a claim for lien in order to protect his rights against subsequent purchasers or encumbrancers, if, within four months after the last payment shall have become due and payable, he brings suit to enforce his lien.

3. SAME—*lien attaches to any interest of owner in the land—effect of conveyance.* Under section 1 of the Mechanic's Lien act of 1895 a lien for machinery placed in an electric light plant by contract with the equitable owner of the land attaches to his equitable interest, and upon his obtaining the legal title attaches thereto, and is not divested by subsequent conveyance of the land and plant to a city.

4. SAME—*land purchased by city subject to mechanic's lien is liable to forced sale.* If a contractor has perfected a lien against real estate while it is the property of an individual owner, the subsequent purchase of the property by a municipal corporation does not deprive the lienor of the benefit of the statutory provisions for the enforcement of the lien by a forced sale of the property.

5. SAME—*what items are properly included in mechanic's lien for cost of engine.* If the contract for an engine for an electric light plant provides that the sum of $50 shall be added to the contract price of the engine in case the services of an erector are needed to set up the engine, the sum of $50 for services, board and expenses of the erector while setting up the engine is properly regarded as part of the contract price of the engine for which the lien is allowed.

6. SAME—*when price of shafting not furnished is properly included as part of cost of engine.* Where a contract specifies the total price for an engine equipped with a certain length of shafting and provides for an additional charge per foot for extra shafting, it is proper to include, as part of the cost of the engine, the price of a certain amount of extra shafting ordered by the purchaser but which was afterwards cut off by his order, thereby rendering it valueless.

189—38

7. Same—*bill need not expressly denominate the complainant as a contractor or sub-contractor.* It is not essential that a bill for a mechanic's lien shall in express terms denominate the complainant to be either a contractor or a sub-contractor, if the facts necessary to establish the capacity in which arises complainant's right to the relief claimed are plainly alleged.

8. Pleading—*when pleader is not concluded by the averment of legal inference.* A pleader is not concluded by the averment of a legal inference if such inference is repugnant to the true legal conclusion to be drawn from the state of facts alleged, and hence the complainant in a bill to enforce a mechanic's lien is not concluded by the averment that he is a sub-contractor, if the facts alleged show that he is a contractor.

*City of Salem* v. *Lane & Bodley Co.* 90 Ill. App. 560, affirmed.

Writ of Error to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Marion county; the Hon. William M. Farmer, Judge, presiding.

George W. Smith, and L. M. Kagy, for plaintiff in error:

A statutory lien can exist only when it has been perfected in the manner prescribed by the statute authorizing it. *Brick Co.* v. *Engineering Co.* 76 Ill. App. 380.

The statute in relation to mechanics' liens, being in derogation of the common law, should be strictly construed. It should not be enlarged by implication or by uncertain construction, but should be given only such force as clearly belongs to it. To say a right under such a statute is doubtful is substantially tantamount to saying that it does not exist. *Belanger* v. *Hersey,* 90 Ill. 71; *Butler* v. *Gain,* 128 id. 23; *Shaw* v. *Chicago Manf. Co.* 144 id. 520; *Brick Co.* v. *Engineering Co.* 76 Ill. App. 380.

The plaintiff in error is a municipal corporation, and a mechanic's or material-man's lien will not lie against it, and its property cannot be sold under execution to satisfy a judgment or decree. *Chicago* v. *Hasley,* 25 Ill. 485.

The Mechanic's Lien law was framed with reference to such property as is subject to be sold under execution,

and as to such property as is exempted by law from sale on execution the lien is incapable of enforcement, and its provisions, as respects such property, are nugatory and entirely inapplicable.  *Bouton* v. *Supervisors*, 84 Ill. 384.

Laws creating liens in favor of mechanics do not operate on the public property of municipal corporations. *Lowe* v. *Howard County*, 94 Ind. 553.

The Mechanic's Lien law of 1895 has not changed the law above cited, but has affirmed inferentially the foregoing decisions.   *Lumber Co.* v. *Brown*, 171 Ill. 487.

The notice provided in the Mechanic's Lien law to be given by a sub-contractor to the owner of the property, to hold him liable, must be in writing and must be served personally.   Service by mail is insufficient to charge him. *Carney* v. *Tully*, 74 Ill. 375.

A material-man's lien only attaches where the material furnished has been actually used on the land and building.   There must not only be a contract, but an actual use of the material furnished.   There is no lien upon the premises till the material is put upon them.   *Hunter* v. *Blanchard*, 18 Ill. 318;   *Gove* v. *Cather*, 23 id. 634.

VanHoorebeke & Louden, and Frank F. Noleman, for defendant in error:

Under the act of 1895 the filing of a sworn statement by the party furnishing the material or machinery is optional, and not essential to his right of recovery, provided he shall bring suit to enforce his lien within four months after the last payment shall have become due and payable according to the terms of the original contract.   Hurd's Stat. sec. 7, p. 1036.

Where a party holds the legal title and makes improvements the land is bound for the liens of mechanics, and this party is the owner though the funds with which the property was purchased belonged to other persons. *Springer* v. *Kroeschell*, 161 Ill. 358;  Phillips on Mechanics' Liens, sec. 66.

The lien given by the statute to a mechanic or material-man for work done or materials furnished in the erection or repair of a building will attach from the date of the contract, and whoever purchases the property after the contract is made purchases it subject to the lien under that contract and is bound by it. *Springer* v. *Kroeschell*, 161 Ill. 358.

After the lien has attached all persons deal with the property at their peril. Under the law it is the duty of those purchasing or taking liens on property to ascertain, as best they may, whether it is encumbered with mechanics' liens, and they purchase it subject to such liens. *Clark* v. *Moore*, 64 Ill. 279; *Springer* v. *Kroeschell*, 59 Ill. App. 440.

Mr. CHIEF JUSTICE BOGGS delivered the opinion of the court:

The circuit court of Marion county granted a decree establishing a lien in virtue of the act of the General Assembly entitled "An act to revise the law in relation to mechanics' liens," in force July 1, 1895, (Hurd's Stat. 1899, p. 1104,) in favor of the defendant in error corporation against certain premises belonging to the city of Salem, which premises, together with the buildings and machinery thereon, constitute the electric light plant of the said city. This writ of error brings into review the judgment of the Appellate Court for the Fourth District affirming said decree.

The decree was not awarded on the theory the property thus held by the municipality for the use of the public—to enable the city to discharge its public functions—is within the purview of the Mechanic's Lien law and subject to be sold to discharge an indebtedness contracted by the city for material or labor used in the construction of the plant, but that the lien attached to the electric light plant before it became the property of the city, for the debt of the then owners, T. C. Reed and William Van-

Kirk, and that the city acquired the property subject to the lien. Reed and VanKirk were parties defendant to the bill, and a personal money decree was entered against them and a decree *in rem* against the electric light plant. The appeal was prosecuted on behalf of the city only. If the defendant in error corporation had perfected a lien against the plant while it was the property of an individual owner, the subsequent purchase of the plant by the city could not operate to deprive the lienor of the benefit of the statutory provisions for the enforcement of the lien by a forced sale of the property. The decree is a personal money decree against Reed and VanKirk, and for the sale of the electric light plant in default of payment of the decree debt. There is no decree against the city for the payment of any sum. The city cannot be required, by *mandamus* or any order or process of the court, to pay the decree debt. It is not a decree debtor, but the owner of real property upon which the lien of the decree may operate if it does not pay the sum specified in the decree. It may voluntarily pay the amount necessary to remove the lien from the property, but there is no process or authority of law that may be invoked to coerce it to make payment. The lien is created by the statute, and the statute provides, as the mode of enforcement of the lien, the sale of the land on which the lien has attached. To deny to the plaintiff in error corporation the benefit of this mode of enforcing the decree is, in this case, to nullify the lien.

An investigation of the evidence as preserved in the record has convinced us the chancellor correctly held a lien attached in favor of the defendant in error corporation on the electric light plant while it was the property of said private parties, Reed and VanKirk, the title being in Reed, and that the city of Salem acquired the property subject to the lien. The material facts are: The firm of T. C. Reed & Co., composed of T. C. Reed and William VanKirk, on the 7th day of September, 1898, submitted

a written proposition to the city of Salem to furnish the city a complete electric light plant, in accordance with specifications set out in the proposition, for the sum of $9000, to be paid for, if accepted by the city, in whole (if the city desired) in bonds of the city, or in such bonds to the amount of $3000 and $6000, in six equal annual payments, for which, the proposition provided, the notes of the city were to be given. The proposition contained the following provision: "It is further stipulated that said city shall have the right to pay any or all of said notes or bonds, or both, at any time the said city shall choose, by paying the face or par value of said notes or bonds, and by paying all interest due at the time they may make such selection. When all of said notes, and interest thereon, are fully paid as herein noted, then said Reed & Co. are to convey, in fee simple and clear of encumbrance, the electric light and power plant herein named, and all of the real estate upon which same may be located, with all pole lines, wire and lamp circuits, of whatsoever kinds and nature, so erected in said city, and all interest whatsoever they may have in any pole lines, wire circuits or lamps which may be erected by said city. Should said city desire to issue the full amount of the city bonds of nine thousand dollars ($9000) of five (5) per cent in lieu of issuing the three thousand dollars ($3000) of bonds and the six notes, as herein stated, then the said Reed & Co. agree to accept same at once for the purchase of said plant and at once convey all of the aforesaid property to said city." The proposition was formally accepted by the city council. Reed & Co. caused a tract or parcel of land to be purchased from one W. B. Wilson on which to locate the plant. Reed & Co. arranged with one Thomas S. Marshall, a banker of the city of Salem, to supply them with money to enable them, in whole or in part, to carry out the contract with the city, and then caused Wilson to convey the tract or parcel of land to Marshall by deed of date November 7, 1898, and Marshall

paid the purchase money for the lot to Wilson for Reed & Co. Marshall held the title to secure to him the re-payment of money so advanced to Reed & Co., and also to secure their indebtedness to him for any further advances. The title remained in Marshall until the 17th day of February, 1899, when he conveyed the premises to T. C. Reed, of said firm of Reed & Co. On the 28th day of October, 1898, Reed & Co. contracted with the defendant in error company for an engine wherewith to operate the plant, to be paid for upon the completion and acceptance of the plant. The defendant in error company delivered the engine under this contract on the 21st day of December, 1898, and it was put in place as part of the machinery of the plant. On the 27th day of January, 1899, the defendant in error company notified the city council of the plaintiff in error city that it had furnished the engine to Reed & Co., and the amount due therefor. On the 17th day of February, 1899, Marshall conveyed the land upon which the plant had been built, to Reed & Co., and they tendered the plant to the city as being complete and in full compliance with the contract. The city on that day inspected the plant, accepted it and elected to pay for it in full in the bonds of the city, issued the bonds and delivered them to Reed, and Reed executed a deed conveying the premises on which the plant stood, to the city. The indebtedness to the defendant in error company not being paid, it, within less than four months after the maturity of the demand, filed the bill on which the decree here in question was entered.

The defendant in error was a contractor, within the meaning of that word as used in section 1 of the said Lien act, and it was not necessary notice of the lien should be given, as the suit was begun within four months after the final payment of its debt fell due. Such is the provision of section 7 of the act.

When the contract for the engine was made, the title to the premises on which the plant was being constructed

was in Marshall. But he held it only as security for the indebtedness of Reed & Co. to him. The equitable interest and title were in Reed & Co., with whom defendant in error contracted to furnish the engine, and to whom it did furnish it, and the lien attached to that interest. In section 1 of Mechanic's Lien act (Hurd's Stat. 1899, p. 1105,) it is provided: "This lien shall extend to an estate in fee, for life, for years, or any other estate, or any right of redemption, or other interest which such owner may have in the lot or land at the time of making such contract or may subsequently acquire therein, and as to the improvements for which the lien is claimed, shall be superior to any right of dower of husband or wife in such improvements." Reed, of the firm of Reed & Co., and for the firm, afterward acquired the legal title by deed from Marshall, and the lien attached also to the fee title thus acquired by Reed. · Reed subsequently conveyed to the city, but the lien was in nowise impaired by this change of ownership. The city acquired no greater or better title than its grantor had. Nor did the transfer of the title to the city, as we have before seen, divest the defendant in error company of the lien in its favor which attached to and encumbered the lands in the hands of Reed. There was some testimony to prove the city contracted for the land from Wilson, but by far the greater weight of the proof is adverse to this position. The contract between the city and Reed & Co. did not contemplate the city should be entitled to receive the title to the premises on which the plant was to be built until it had accepted and paid for the plant. If it elected to pay in bonds of the city, the contract provided Reed & Co. should convey the property to the city on delivery of the bonds; but if the city should elect to pay for the plant in part in six notes, due, respectively, in one, two, three, four, five and six years, the contract expressly provided that Reed & Co. should convey to the city only "when all of said notes, and interest thereon, are fully paid." The

city advanced no money to pay for the land, and an affirmative act of acceptance of the plant and payment thereof, as before mentioned, were prerequisites to the right of the city to demand any right or title to the premises. The substance of the entire transaction was, that Reed & Co. proffered to procure, construct and tender to the city a complete electric light plant, (grounds, building and machinery,) constructed in accordance with given specifications and plans, for a specified sum of money, and the city contracted to accept the said plant (grounds, building and machinery,) if constructed and tendered in accordance with the terms of the proposition of said Reed & Co., and under the contract Reed & Co. tendered, and the city accepted, a plant which was encumbered by a legally subsisting lien in favor of the defendant in error company. Such a lien would not be displaced by the conveyance to the city, but the lien remained as fully effective against the property after the conveyance to the city as before.

Section 1 of the act under which the lien accrued declares in express terms that a person who contracts with the owner of land to furnish material, machinery, etc., to be used in erecting buildings on the land or improving the same, shall be known as a contractor. In the notice placed before the city council by the defendant in error company relative to the demand for the engine, the defendant in error was styled "sub-contractor," and such designation is followed in the bill. The true designation of the defendant in error depends upon the facts bearing upon the contractual relation of the city and Reed & Co. These facts were included in the statement, and were, moreover, well known to the council, and it could not have been misled. The allegations of the bill fully disclosed the facts of the entire transaction much in detail, and that the defendant in error company was a "contractor" within the meaning of said section 1, is thus demonstrated. It is not essential that the bill for a

mechanic's lien shall, in express terms, denominate the complainant therein to be either a contractor or a sub-contractor, if the material circumstances of time, place, acts, and other facts necessary to establish the capacity in which arises the right to the relief claimed, are plainly alleged.    The class of lienors to which a complainant belonged is not to be determined from the conclusion of the pleader, but from the facts alleged on which such conclusion rests.    When the necessary facts are stated, the legal consequences or conclusions which arise out of the facts need not be stated; nor does the allegation by the one party and the denial by the other, of a mere legal conclusion, raise an issue.    A pleader is not concluded by the averment of a legal inference, if such inference is repugnant to the true legal conclusion to be drawn from the state of facts alleged in the same pleadings. (12 Ency. of Pl. & Pr. 1024, 1025.)

The total amount for which the lien was established included board, traveling expenses and time of erector, $50.    It is argued there is no authority in the statute for the establishment of a lien for board and traveling expenses.    The contract entered into for the engine provided that if an erector,—one skilled in erecting or fitting and putting the engine in place,—was required, the sum of $50 should be added to the price to be paid for the engine.    Reed & Co. asked, by wire, that an erector be furnished, and an employee of the defendant in error company came to Salem and was engaged some ten days in fitting and adjusting in place the different parts of the engine.    These services, and the expenses connected with their rendition, were properly regarded as composing a part of the contract price of the engine.

There is no force in the complaint that the amount decreed included $12.50 for shafting not furnished to Reed & Co. and which did not enter into the construction of the plant.    The contract for the engine specified the total price to be paid therefor if supplied with shaft-

ing of a specified length, and if longer shafting was found to be necessary an additional charge of $8.50 per foot for the shafting should be added to the price for the engine. The defendant in error company was notified it was necessary the shafting should be one and one-half feet longer than was originally contracted for, and it so prepared the shafting. Subsequently it was discovered the extra length of shafting was not needed, and the defendant in error company was so notified, and directed to cut off the extra one and one-half feet, as it would be in the way, etc. The company complied with the direction and cast the detached end of shafting in the "scrap pile," it being valueless, unless it should be as old iron. The charge for this extra shafting was properly allowed as composing a part of the cost of the engine.

The judgment of the Appellate Court is correct, and is affirmed.

*Judgment affirmed.*