HOME BUILDING CORPORATION,
Plaintiff and Cross-Appellant,

v.

The VENTURA CORPORATION, Michael J. Mason and Susan Mason, Statutory Trustees, Defendants,

and

The Housing Authority of the City of Nevada, Missouri, Defendant and Cross-Appellant.

No. 59980.

Supreme Court of Missouri,
En Banc.

July 24, 1978.

Gerald D. McBeth, Ewing, Ewing, Carter, McBeth & Smith, Nevada, for plaintiff and cross-appellant.

Donald G. Stubbs, Stubbs & Mann, P. C., Kansas City, for defendant and cross-appellant.

Ben R. Swank, Jr., Slagle & Bernard, Kansas City, for amicus curiae.

FINCH, Judge.

This is an action wherein Home Building Corporation (HBC) sought a judgment for the balance due on modular housing units furnished to The Ventura Corporation (Ventura), plus a mechanic's lien on the real property on which the housing units were erected. The trial court entered judgment against the statutory trustees of Ventura for $72,476.46 and impressed a mechanic's lien on the property for that sum. However, on the basis that the property had been sold by Ventura to The Housing Authority of the City of Nevada, Missouri (Authority), a municipal corporation created pursuant to Chapter 99,[1] and that § 99.200 precludes enforcement of such liens against property owned by housing authorities, the court ordered the lien stayed so long as the real estate was owned by Authority. Both HBC and Authority appealed. We have jurisdiction because one of the defenses asserted by Authority is that Chapter 429, insofar as it deals with establishment of mechanic's liens, is unconstitutional because violative of the due process clauses of the fourteenth amendment of the United States Constitution and Article I, § 10, of the Missouri Constitution.

Authority was created by action of the Nevada City Council to be "a municipal corporation exercising public and essential governmental functions" with the overall purpose of providing safe and sanitary housing for persons of low income. In pursuance of that objective, it contracted on April 27, 1973, with Ventura to purchase from it a completed housing project on a "turnkey" basis. Ventura agreed to construct 70 dwelling units (as described in an exhibit to the contract) on unimproved real estate which it owned and to convey the property by general warranty deed to Authority following satisfactory completion of the project.

Thereafter, on September 27, 1973, Ventura entered into a contract whereby HBC was to provide modular housing units for the housing project. HBC substantially performed its obligations under the contract, completing its work thereon on March 29, 1974. A dispute arose over certain alleged construction defects and $72,476.46 of the contract price was withheld. On July 31, 1974, HBC filed its mechanic's lien statement and on January 21, 1975, filed this action to foreclose the lien.

At the outset we must decide two threshold questions involving HBC's right to maintain this action. The first question involves the dual issues of whether HBC was required to serve notice of its intention to file a lien statement and whether its statement was timely filed. The answers to both of these issues depend on whether HBC was an original contractor or a subcontractor within the meaning of Chapter 429. If, as Authority contends, HBC was a subcontractor, it was required to serve notice of its intention to file a lien statement in accordance with § 429.100 and it was required to file its lien statement within four months after the indebtedness accrued as provided in § 429.080. HBC served no notice on either Ventura or Authority and it filed its lien statement four months and

---

1. All statutory references are to RSMo 1969 unless otherwise indicated.

two days after the date on which the indebtedness accrued. If, however, HBC was an original contractor, no notice was required and HBC had six months in which to file its lien statement.

█ Authority argues that the best evidence as to the relationship of the parties and the status of HBC is that the contract between Ventura and HBC referred to them as contractor and subcontractor respectively. That characterization is not necessarily determinative. Rather, we must look to the language of Chapter 429 and determine whether under its terms HBC was an original contractor. *J. H. Magill Lumber Co. v. Carter,* 17 S.W.2d 581 (Mo.App.1929). The question of what Chapter 429 means when it speaks of an original contractor was stated in *Vasquez v. Village Center, Inc.,* 362 S.W.2d 588, 593 (Mo.1962), when the court said: "One who makes a contract to perform labor or furnish materials with the then owner of the property is an original contractor." In other words it is a person or firm which has contracted directly with the owner concerning what such contractor is to do.

█ HBC contracted directly with Ventura. Since Ventura was the record owner of the property and was exercising dominion over the the real estate at that time, this would appear to cause HBC to be an original contractor. However, Authority argues that when Ventura contracted with HBC it was not the owner of the property because it had contracted to sell to Authority, thereby making Authority the equitable owner. It follows under *Vasquez,* argues Authority, that HBC was not an original contractor. We disagree. It is true that Authority had become the equitable owner and it also is true that in *Vasquez* the court held that an equitable owner, exercising the rights of a proprietor in the land at the time a contract is made, may be the owner thereof for purposes of the mechanic's lien statute. It does not automatically follow, in the factual situation presented, that Ventura was not the owner of the property in question. Ventura, not Authority, was building the housing units. It was exercising dominion over the property when HBC contracted to furnish the modular housing units. Therefore, HBC was an original contractor and its lien statement, filed four months and two days after completion of its work, was timely filed. *J. H. Magill Lumber Co. v. Carter, supra.*[2] It was not required to serve notice of an intention to file such a statement.

The second threshold issue involves the question of whether HBC commenced this action within six months after filing its lien statement as required by § 429.170. Authority recognizes that the suit actually was filed within the six month deadline but it claims that HBC did not commence the action as required by § 429.170 in that it did not join all indispensable parties within the six months. It points out that the corporate charter of Ventura, named and served as a party, had been forfeited on January 1, 1975, by the Secretary of State and that HBC should have named the statutory trustees of Ventura as necessary and proper parties defendant under § 351.525. Not having done so, says Authority, HBC did not comply with § 429.170 and the suit is barred.

The records in the office of the Secretary of State, if examined, would have disclosed the forfeiture of Ventura's charter. HBC was unaware of that development and named Ventura as a party defendant. Service was had on Ventura's registered agent. Thereafter, Ventura filed an answer in which it admitted its corporate existence. The pleadings of Authority did likewise. It was not until sometime later (September 1976) that HBC learned that Ventura's charter had been forfeited. It so advised the court and sought and was granted leave to amend and name the statutory trustees of Ventura as parties defendant. Thereafter, Authority filed a pleading denying, for the first time, the corporate existence of Ventura.

This issue is governed by Rule 55.33(c), V.A.M.R., which became effective Septem-

---

2. *See generally,* Annot., 50 A.L.R.3d 944 (1973).

ber 1, 1973. It governs relation back of amendments changing the party against whom a claim is asserted. Three requirements for such relation back are stated.

The first requirement is that the claim or defense asserted against the new party must arise out of the conduct, transaction or occurrence set forth in the original pleading. Clearly, this requirement was satisfied. The claim against the statutory trustees is the same one asserted in the original petition against Ventura and is based on the transactions set forth in the original pleading.

The second requirement is that the party to be brought in by amendment must have received such notice of the institution of the action within the period provided by law for commencing the action against him that he will not be prejudiced in maintaining his defense on the merits. The statutory trustees in this instance were the officers of Ventura when its charter was forfeited. While there was no direct evidence offered at trial to show that they had notice of the suit when filed in January 1975, the record supports an inference that they did. It shows that the petition and summons were served on Ventura's registered agent and that thereafter a timely answer was filed by Ventura, admitting, among other things, its corporate existence. The filing of this answer was an act attributable to the officers of Ventura. There is no evidence to indicate that such inference is not reasonable or proper.

The third requirement under Rule 55.-33(c) is that the party to be joined knew or should have known that, but for a mistake by HBC concerning the identity of the proper party, the action would have been brought against him. We find this requirement to be satisfied. The statutory trustees added as parties defendant were the officers and directors of the corporation, designated by statute to be successors in interest to the corporation. This would indicate that they should have known that, absent HBC's mistake in overlooking Ventura's status as a corporation whose charter had been forfeited, they would have been named in their capacity as statutory trustees as parties defendant.

■ It is significant that Authority has not contended in its briefs or in oral argument that Rule 55.33(c) does not govern. We hold that it does govern and that HBC commenced its action within six months as required by § 429.170.

Authority's principal contention is that the trial court erred in establishing a mechanic's lien in favor of HBC for the reason that Chapter 429, insofar as it deals with establishment of mechanic's liens, violates the due process clauses of the fourteenth amendment of the United States Constitution and Article I, § 10, of the Missouri Constitution and, hence, is unconstitutional. This position is premised on an asserted absence of procedural due process by reason of the fact that the statute did not require notice and a hearing to test the validity of the asserted claim as conditions precedent to the filing of HBC's lien statement.

This challenge to the constitutionality of Chapter 429 is based primarily on four decisions of the Supreme Court of the United States which addressed the question of whether certain statutory prejudgment creditor remedies were violative of the due process clause of the fourteenth amendment. Those were *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), which involved garnishment of wages, *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), which involved replevin of personalty, *Mitchell v. W. T. Grant*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), which involved sequestration of personalty under a vendor's lien and *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), which involved garnishment of a bank account. In *Sniadach, Fuentes* and *North Georgia*, the court held the state statute involved to be unconstitutional. The statute in *Mitchell* was upheld on the basis that it met the procedural due process requirements of the fourteenth amendment. The teaching of those cases collectively is that when as a result of state action an owner of property

is deprived of a significant property interest without notice or an opportunity for a hearing as to probable validity of the asserted right (either before or immediately after the taking), procedural due process required by the fourteenth amendment is lacking.

HBC makes no contention in its brief that the establishment of the mechanic's lien which it asserts was not the result of state action. It argues only that there was no deprivation of a significant property interest and that Chapter 429 provides procedural due process. We will limit our consideration to those questions.

In *Sniadach, Fuentes* and *North Georgia*, the three cases in which the Supreme Court held that state statutes were unconstitutional on the basis that there was a deprivation of a significant property interest without minimum procedural due process being afforded, the court dealt with instances in which the owner of property was deprived of actual possession and enjoyment of the property involved. For example, in *Sniadach* wages were garnished and, as a result, there was complete deprivation of use of those funds by the owner until the case was decided on the merits. In *Fuentes* property was seized in a replevin action and in *North Georgia* a corporate bank account was garnished. Again, there was actual deprivation of possession and use of the property seized.

In the instant case nothing comparable occurred. Pursuant to the policy decision by the Missouri General Assembly in enacting Chapter 429 to grant a meaningful method of securing payment to those supplying labor, work and materials for improvements on real estate (the rational basis for which policy is obvious), HBC merely acquired a mechanic's lien to the extent that it furnished work, labor and materials for housing constructed on Ventura's prop-

erty. Section 429.010. That lien, pursuant to the "first spade rule," dated from the visible commencement of work. *See generally*, Comment, 42 Mo.L.Rev. 53, 55–57 (1977).

When HBC had completed its work, it filed its verified, written statement of its account on the project with the circuit clerk.[3] This statement did not create a new lien. It simply reduced to written, verified form the details of the statement of charges and credits making up the account for which the lien, established by § 429.010, is claimed. Its filing continued the lien for a reasonable period to permit filing of suit if the account was not settled as a result of the filing of the detailed statement. HBC thereafter filed suit to adjudicate and enforce the lien within six months as required by § 429.170.[4]

Procedural due process requirements, such as those required in *Sniadach, Fuentes* and *North Georgia*, attach only when state action gives rise to a deprivation of a significant property interest. Such a deprivation has not occurred in this case. Neither the accrual of a lien in favor of HBC under § 429.010 or the filing of the verified, written details of the entire account pursuant to § 429.080 or the commencement of suit according to the timetable established by § 429.170 divested the owner of possession, use or enjoyment of its property on which the housing was constructed. The owner of the real estate on which HBC sought to establish and enforce a mechanic's lien retained possession and use of the property. As a matter of fact, it concluded a sale of the property to Authority after the lien statement was recorded.

It may well be, as Authority argues, that the existence of the lien created by § 429.-010 and preserved by actions taken pursuant to §§ 429.080 and 429.170 would have

___

**3.** This was filed four months and two days after the last work done by HBC, which obviously was within six months after the indebtedness accrued, as required by § 429.080. Under that section original contractors must file this lien statement within six months, journeymen and laborers must file it within sixty days, and all other persons claiming a lien must file within four months.

**4.** This section also provides that any such action shall be "prosecuted without unnecessary delay to final judgment."

an economic effect in that one dealing with the owner of the property would demand protection against an eventual money claim if the lien is adjudicated to be valid and enforceable, but that does not deprive the owner of a significant property interest. The possession and use of the property is retained and the owner may sell, lease or encumber. The situation is comparable to several others wherein a pending suit has some economic impact on an owner but does not deprive it of a significant property interest. Examples include a suit to quiet title (including suits to establish title by adverse possession) or to establish an easement or a right-of-way of necessity or to settle a disputed boundary. It is comparable to the filing of a lis pendens notice. Such suits are instituted and maintained without the requirement of a hearing before filing to test the validity of the asserted claim.

The record in this case supports the foregoing conclusion that Chapter 429 does not result in property owners being deprived of significant property interests. There was no evidence that Ventura or its statutory trustees as successors were deprived of any significant property interests. As a matter of fact, the evidence shows that Ventura's sale of the property to Authority was consummated as scheduled. The existence of the lien claims of HBC did not prevent a sale of the property. Nor has Authority offered any evidence to show that it, as equitable owner or as successor owner, has suffered any deprivation of a significant property interest. Documents introduced show that in the closing of its purchase from Ventura, Authority received an irrevocable letter of credit in the amount of 7½% of the purchase price to provide protection against mechanic's lien claims. It also received a title insurance policy. There has been no proof or even any claim that these will not provide complete protection of Authority if HBC's mechanic's lien claim in the amount adjudicated to be due is not paid by Ventura.

The result we reach on this issue is in accord with that reached in most of the reported cases which have dealt with this question. The only decision of the United States Supreme Court as to constitutionality of a mechanic's lien law under the due process clause of the fourteenth amendment is its summary affirmance of a decision of a three judge court in the U. S. District Court of Arizona in *Spielman-Fond, Inc. v. Hansons, Inc.*, 379 F.Supp. 997 (D.Ariz.1973), *aff,d*, 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974). In that case, involving a lien claimed for labor and materials furnished for a mobile home park development, the district court upheld Arizona's mechanic's lien statute on the basis that there had been no deprivation of a significant property interest. The claimed deprivation was the same asserted in this case, namely, that the owner was deprived of the ability to alienate the property freely. The court held that the mechanic's lien did nothing more than to impinge on economic interests of the property owner. It did not take away either possession or use of the property pending final disposition of the case adjudicating the asserted lien and rights thereunder.

Subsequent decisions by various federal courts have followed *Spielman-Fond* and have upheld state mechanic's lien statutes on the basis that impairment of property rights by such statutes is insignificant or *de minimus*. These cases include *Ruocco v. Brinker*, 380 F.Supp. 432 (S.D.Fla.1974); *In re Thomas A. Cary, Inc.*, 412 F.Supp. 667 (E.D.Va.1976); and *B & P Development v. Walker*, 420 F.Supp. 704 (W.D.Pa.1976). See also *Cook v. Carlson*, 364 F.Supp. 24 (S.D.S.D.1973), decided before *Spielman-Fond*. These cases, it should be noted, all involved claims that the mechanic's lien statutes deprived owners of property of significant property interests without providing procedural due process. In each instance the mechanic's lien statute was upheld.

Several state supreme courts also have upheld the constitutionality of mechanic's lien statutes against similar attacks. These cases include *Tucker Door & Trim Corp. v. 15th Street Co.*, 235 Ga. 727, 221 S.E.2d 433 (1975); *Connolly Development, Inc. v. Supe-*

rior Court of Merced County, 17 Cal.3d 803, 132 Cal.Rptr. 477, 553 P.2d 637 (1976); and Silverman v. Gossett, 553 S.W.2d 581 (Tenn. 1977).[5]

Two cases cited by Authority have held state mechanic's lien statutes unconstitutional under the due process clauses. These are Roundhouse Construction Corp. v. Telesco Masons Supplies, 168 Conn. 371, 362 A.2d 778, vacated and remanded, 423 U.S. 809, 96 S.Ct. 20, 46 L.Ed.2d 29 (1975), reaff'd on both state and federal grounds, 170 Conn. 155, 365 A.2d 393, cert. denied, 429 U.S. 889, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976), and Barry Properties, Inc. v. Fick Bros. Roofing Co., 277 Md. 15, 353 A.2d 222 (1976). We do not find these two cases persuasive. They impose a very strict limitation on the reasonable efforts of a state to protect those who supply labor and materials to make improvements to real estate. Such results, in our judgment, are not dictated by the decisions in Sniadach, Fuentes, Mitchell and North Georgia.

We hold that Chapter 429 does not violate the due process clauses of either the fourteenth amendment to the United States Constitution or Article I, § 10, of the Missouri Constitution.

Authority next contends that even if Chapter 429 is constitutional, it was error for the trial court to establish a mechanic's lien against the tract on which the housing units were erected because the declared public policy of this state precludes the establishment of mechanic's liens on municipally owned property. It cites and relies on Union Reddi-Mix Co. v. Specialty Concrete Contractor, 476 S.W.2d 160 (Mo.App. 1972), which held that a mechanic's lien may not be imposed on municipally owned water works. It also cites Hertel Electric Co. v. Gabriel, 292 S.W.2d 95 (Mo.App.1956), for the proposition that by its contract to purchase it became the equitable owner for mechanic's lien purposes.

Assuming, for purposes of this appeal, but without deciding, that municipally owned property devoted to use as public housing may not be subjected to a mechanic's lien, the first question to be resolved is whether this property was municipally owned property at the time the lien attached. We conclude that it was not. As previously noted, Authority became the equitable owner when it contracted to buy the tract and to receive a deed thereto after the housing units had been erected. However, Ventura retained possession of the property and under its contract with Authority was to erect housing units thereon. It retained control over the tract until the units were completed and a deed executed. It continued to be an owner which had the authority to contract for erection of improvements which resulted in the statutory lien which HBC claims under the provisions of Chapter 429. This was not municipal property at this point. Hertel Electric does not dictate a contrary conclusion. It held merely that the purchaser of land under contract holds a sufficient ownership interest to enable it to impress a mechanic's lien on such equitable interest. However, Authority exercised

5. The mechanic's lien statutes involved in these federal and state decisions differ in some details from each other and from the Missouri statutes. However, those differences are not significant and do not dictate a different result in this case.

The Missouri statute, in our view, contains provisions which protect the rights of the property owner as well as those of lien claimants. It is designed to secure expeditious resolution of lien claims. As previously noted, the lien statements must be filed promptly after the claimant completes work. Section 429.080. Journeymen and day laborers must file their lien claim within 60 days, original contractors must file within six months and all others (subcontractors, material suppliers who do not deal directly with the owner, etc.) must file within four months. If the claimant has not dealt directly with the owner, a notice of intention to file a lien statement must be served on the owner at least ten days before the lien is filed. The claims must be verified and provide details.

Suit to adjudicate and enforce any lien must be filed within six months of the date when the lien statement is filed, § 429.170, and is to be prosecuted without unnecessary delay. If there is more than one lien claim, an equitable action may be brought so as to adjudicate all such claims in a single action. Section 429.270. Such suit may be instituted by any lien claimant, by the owner or a lessee or by a mortgagee or holder of any other encumbrance.

no such dominion over the tract in this case. The fact that an equitable owner may under appropriate circumstances be an owner under a mechanic's lien law does not preclude a vendor from being an owner which may create a lien. Under the facts in this case, the tract was not municipally owned land when HBC's lien arose and *Union Reddi-Mix* is not applicable and does not govern. Ventura could and did by its actions cause a lien to arise in favor of HBC.

In further support of its contention that it was equitable owner and that this prevented HBC from establishing a lien on its property, Authority cites *State ex rel. City of St. Louis v. Baumann*, 348 Mo. 164, 153 S.W.2d 31 (banc 1941) and *State ex rel. Smith v. City of Springfield*, 375 S.W.2d 84 (Mo. banc 1964). Those cases held that acquisition of equitable title as a result of a contract of purchase by a governmental agency is sufficient to cause property to be exempt from liability for taxes assessed. We find those cases inapplicable. Their rationale is that the public policy of the state is not to tax property held by another political subdivision of the state and that such policy would be violated if, when a political subdivision acquires equitable title to property, it continues to be subject to taxes in favor of another political subdivision. Such reasoning can have no application when the issue, as here, involves a question of priority as between a private lienholder and a governmental purchaser of the property to which that lien is applicable.

The second question to be answered is whether acquisition by Authority of a tract on which a mechanic's lien existed had the effect of destroying that lien because the property was now municipally owned. Apparently, this question has not been decided by a Missouri court but it has been considered in other jurisdictions. In *Crane Creek Irrigation District v. Portland Wood Pipe Co.*, 231 F. 113 (9th Cir. 1916), a power company owned certain water rights, reservoir sites and rights-of-way upon which some construction work had been performed. It contracted with two irrigation districts to complete an irrigation system according to agreed upon plans and specifications, and after completion to execute conveyances to the districts. A subcontractor on said project filed and perfected a mechanic's lien. The irrigation districts, to which the property was conveyed, sought to avoid enforcement of the lien, contending that they were public corporations and that their property could not be subject to mechanic's liens. The court upheld the lien, saying at 116:

"While on grounds of public policy the property of municipal corporations held for public purposes may be exempt from the operation of the general lien laws of the state, yet such municipalities may not enter into contracts with third persons for the construction of plants or other improvements on the property of such third persons to be thereafter conveyed to the municipality, and then claim the statutory exemption from liens for labor performed upon or materials used in the construction of the contemplated improvements."

The court held that the lien attached before the irrigation districts acquired the property and that the liens were not affected or defeated by the subsequent conveyance to the districts. Other cases which support the rule announced in *Crane Creek* are *City of Salem v. Lane & Bodley Co.*, 189 Ill. 593, 60 N.E. 37 (1901); *Findorff v. Fuller & Johnson Mfg. Co.*, 212 Wis. 365, 248 N.W. 766 (1933); and *Meads v. Dial Finance Co.*, 56 Ala.App. 84, 319 So.2d 281 (Ct.App.1975).

The reasoning in the foregoing cases is sound. It would be unjust to permit a municipality, by purchasing property which is subject to claims for mechanic's lien rights, to defeat those liens simply because the property has been acquired for municipal purposes. If a city condemns land which is subject to the lien of a deed of trust, it does not thereby destroy the rights of the lienholder in such a way as to deny it the benefits of its lien. Neither should a municipal body be entitled by purchase to destroy a mechanic's lien and deprive the holder thereof of the protection it was intended to afford. Public policy does not so require. This is demonstrated by the public

policy expressed in § 107.170 which requires that when a contract is let for public works for the state or any county, city, etc., a bond to guarantee payment of materials, labor, etc., furnished or performed on such project shall be required. In this instance the municipal agency did not take title to the land and contract itself for erection of the housing. If it had, a bond would have been required. Instead, it contracted to purchase a completed housing project. Under such circumstances it received title thereto subject to existing valid mechanic's liens.

We note that the parties are in agreement that the trial court inadvertently failed to deduct an agreed upon credit of $2,255.88 from the $72,476.46 for which judgment was entered. The amount for which judgment is entered should be reduced by the amount of that credit. As the foregoing contentions of Authority have been rejected, the judgment imposing a lien on its property in the amount of $70,220.58 is affirmed.

HBC appeals from that portion of the judgment whereby the trial court ordered HBC's lien stayed so long as the real estate to which it is applicable is owned by Authority. Apparently, it reached the conclusion to stay execution on the basis of § 99.200 which provides that real property of a housing authority is exempt from levy and sale by virtue of an execution and that a judgment against an authority shall not be a lien on its real estate. The section further provides, however, that it does not apply to or limit the right of obligees to foreclose or otherwise enforce any mortgage of the Authority. In our view, this statute is not intended to apply to a situation such as we now consider wherein the holder of a lien against real estate, applicable thereto when the property was acquired by the city, seeks to foreclose that lien. Instead, it would appear to be designed to prevent sale under execution to satisfy debts of or claims asserted against the Authority. What HBC seeks to do in this case is to enforce a lien which is comparable to the lien of a mortgage against the property. If Authority had purchased property on which there was an existing deed of trust, it would not be entitled to have enforcement of the lien thereof stayed. Likewise, it is not entitled to a stay of enforcement of HBC's mechanic's lien. The trial court erred in ordering the stay and HBC's appeal from that order is sustained.

The judgment, as modified herein, is affirmed.

MORGAN, C. J., and BARDGETT, DONNELLY, RENDLEN and SEILER, JJ., concur.

SIMEONE, J., not participating because not a member of the court when cause was submitted.