900 S.W.2d 258 (1995)
LANDMARK SYSTEMS, INC., Appellant, and
S.C.I. Environmental, Intervenor,
v.
DELMAR REDEVELOPMENT CORP. and Union Sarah, Defendants,
Taco Bell Corporation, Respondent.
No. 65297.
Missouri Court of Appeals, Eastern District, Division Two.
June 27, 1995.
*259 Joseph F. Devereux Jr., St. Louis, for Landmark Systems.
*260 Daniel Gerard Pelikan, St. Charles, for SCI Environmental, Intervenor.
Randall F. Scherck, St. Louis, for Del-Mar Corp.
John E. Toma Jr., Clayton, for Taco Bell Corp.
WHITE, Judge.
Landmark Systems, Inc. (Landmark) brought an action against Taco Bell Corporation (Taco Bell) and others[1] seeking to enforce a mechanic's lien on real property located at 626 North Kingshighway in the City of St. Louis, Missouri. Landmark also sought recovery in quantum meruit for the reasonable value of the labor and materials supplied by Landmark for the improvement of the property. The trial court awarded judgment in favor of Taco Bell on the ground Landmark had not complied with the notice provisions of § 429.012 RSMo 1986 and found Taco Bell had not been unjustly enriched. Landmark appealed. We affirm.
For purposes of appeal, the facts are as follows. On June 13, 1989, Taco Bell entered into a purchase agreement with Del-Mar Redevelopment Corporation (Del-Mar) for real property located in the City of St. Louis, Missouri. Taco Bell agreed to purchase the property for $300,000. Thereafter, Taco Bell engaged Giles Engineering Associates, Inc. to conduct soil tests at the property. The tests revealed a significant level of soil contamination. Upon discovery of the soil contamination, Taco Bell had the right to cancel the purchase agreement. However, Taco Bell and Del-Mar entered into renegotiations regarding the contamination problem and on December 20, 1989 entered into an Amendment to Purchase Agreement providing Del-Mar would contract for the clean-up of the contaminated soil. The amendment further provided Taco Bell would withhold $40,000 from the purchase price until receipt of notification from the Missouri Department of Natural Resources stating development could proceed on the property.
On the same day, Landmark entered into an agreement with Union Sarah Economic Development Corporation[2] (Union Sarah) for removal and replacement of the contaminated soil on the property. The agreement did not have a fixed price. Instead it provided a price per cubic yard of soil with no amount of soil specified. It is undisputed Del-Mar was the owner of the property at the time the contract was executed. Taco Bell did not order the labor performed or materials supplied by Landmark. It did not negotiate for, authorize, supervise or monitor the same, or participate in any meaningful way in the contract formation or performance.
On December 22, 1989, Taco Bell paid Del-Mar $260,000, withholding $40,000 as agreed, and purchased the property. Landmark began furnishing labor and materials on the property on January 2, 1990 and continued thereafter until January 15, 1990. On January 9, 1990, representatives of Landmark and Del-Mar met at the property. As a result of this meeting, Landmark was authorized to remove and replace substantially more soil than originally contemplated. No representatives of Taco Bell were at this meeting.
On January 17, 1990, Landmark presented Del-Mar with a final invoice in the amount of $110,295 based on the amount of contaminated soil actually removed from the property. On April 12, 1990, Del-Mar proposed a payment schedule to Landmark, which involved paying it the $40,000 previously withheld from the purchase price of the property and making three additional payments over a period of three months. On April 27, 1990, Taco Bell released the $40,000 previously withheld from the purchase price of the property and, at the request of Landmark, Taco Bell's check was made payable to Del-Mar and Landmark jointly. Del-Mar did not make any additional payments to Landmark *261 pursuant to the letter of April 12, 1990. When additional payment was not forthcoming, Landmark filed a ten-day notice of intent to file a mechanic's lien pursuant to § 429.012. This notice was timely served on Del-Mar and Taco Bell. Landmark subsequently filed a mechanic's lien against the property and, on July 29, 1990, brought this lawsuit against Del-Mar and Taco Bell to recover the balance of $70,295 for soil removal and replacement on the property.
After a non-jury trial, the court found Landmark was not entitled to enforce its mechanic's lien because it had failed to supply the statutory notice as required by § 429.012.[3] The court also found Taco Bell was not unjustly enriched by Landmark's performance and, therefore, Landmark was not entitled to relief in quantum meruit.
Landmark argues, in its first point on appeal, the trial court erred in ruling the notice referred to in § 429.012 was required because Taco Bell is a large corporation sophisticated in the areas of real estate and construction. As such, Landmark contends, Taco Bell had knowledge of the mechanic's lien law and, therefore, Landmark's failure to comply with the statute's notice provision should not bar a mechanic's lien on the subject property. Landmark relies primarily upon Overberg Decorating Center v. Selbah Properties, 741 S.W.2d 879 (Mo.App.E.D. 1987) in support of its argument. We find Overberg distinguishable from the present case. Namely, in Overberg, notice substantially equivalent to the statutory language was given and this was the basis of our decision. Id. at 881. In the present case, Landmark does not contend it substantially complied with the mandated statutory language of § 429.012.[4] In addition, this court's noting in Overberg of the owner's extensive involvement in real estate development was not dispositive, but merely provided "further support" for our holding. Id.
It is true, as Landmark suggests, the purpose of § 429.012 is to "warn inexperienced property owners of the danger to them which lurks in the mechanic's lien statute." BCI Corp. v. Charlebois Const. Co., 673 S.W.2d 774, 779 (Mo. banc 1984). However, this court is also aware the requirements of our statute are mandatory. White River Dev. v. Meco Systems, 806 S.W.2d 735, 738 (Mo.App.S.D.1991). The statute does not limit the necessity of this notice to those inexperienced with, or having lack of knowledge about, the mechanic's lien laws. Id. The statute has no exceptions and this court will not accept the invitation to create an exception in this case. Additionally, as noted in White, allowing a lien where there was not substantial compliance with the notice provision contained in § 429.012 would add another issue to each mechanic's lien case, namely the extent of the property owner's knowledge *262 of the mechanic's lien laws. Id. The fact such an exception was not incorporated into the statute indicates the legislature did not intend such a result. Id. Landmark failed to give the required statutory notice to Taco Bell and, therefore, the trial court properly found it was not entitled to a mechanic's lien against the property. Point denied.
In its second point on appeal, Landmark argues "the trial court erred in ruling Landmark was an original contractor" and, as such, was required by § 429.012 to comply with the statute's notice provision. Landmark specifically argues, instead, it was a subcontractor and, thereby, excused from the statute's notice requirement.
An original contractor is one who makes a contract to perform labor or furnish materials with the then owner of the property. Morgan Wightman Supply Co. v. Smith, 764 S.W.2d 485, 489 (Mo.App.E.D.1989). In other words, an original contractor is a person or firm which has contracted directly with the owner concerning what such contractor is to do. Home Bldg. Corp. v. Ventura Corp., 568 S.W.2d 769, 771 (Mo. banc 1978).
It is undisputed Landmark contracted directly with Del-Mar. Because Del-Mar was the record owner of the property and was exercising dominion over the real estate at the time the contract was executed, it is apparent Landmark was the original contractor. However, Landmark argues Del-Mar was not the owner of the property because it had contracted to sell the property to Taco Bell, thereby, making Taco Bell the equitable owner. It follows, Landmark reasons, Del-Mar was the original contractor and Landmark was merely a subcontractor.
In Vasquez v. Village Center Inc., 362 S.W.2d 588 (Mo.1962) the court held an equitable owner, exercising the rights of a proprietor in the land at the time a contract is made, may be the owner for purposes of the mechanic's lien statute. However, it does not automatically follow, from the facts presented in this particular case, Del-Mar was not the owner of the property in question. Home Bldg. Corp., 568 S.W.2d at 771. In the instant case, it was Del-Mar, not Taco Bell, who contracted with Landmark for removal and replacement of the contaminated soil. Taco Bell did not order the labor performed or materials supplied by Landmark. It did not negotiate for, authorize, supervise, monitor, or participate in any meaningful way in the contract formation or performance. Taco Bell had no role in the decision to expand the scope of the work. Taco Bell gave Landmark no reason to believe it could look to Taco Bell for payment. We find these facts support the trial court's finding Landmark was the original contractor and, as such, was required to serve notice to Taco Bell as prescribed by § 429.012. Id. Point two denied.
Finally, Landmark contends it was entitled to recovery in quantum meruit. Quantum meruit is a remedy for the enforcement of a quasi-contractual obligation and is generally based on the principle of unjust enrichment. Forry v. Department of Natural Resources, 889 S.W.2d 838, 847 (Mo.App. W.D.1994). Unjust enrichment occurs when a person retains the benefit and enjoys the benefit conferred upon him without paying its reasonable value. Id.
In the case at bar, there was no unjust enrichment. Taco Bell agreed to pay Del-Mar $300,000 for the property. The evidence adduced at trial clearly established this amount reflected the value Taco Bell and Del-Mar placed on the property if free from contamination. We also note, Landmark did not adduce any evidence at trial showing the property was worth more than $300,000 following clean-up. Taco Bell paid Del-Mar the full contract price, by paying $260,000 at closing and $40,000 in a check made payable to Del-Mar and Landmark jointly. Thus, Taco Bell is not unjustly enriched because it has paid for what it has received. Although it is unfortunate Del-Mar failed to pay Landmark, equity will not require the owner of property to pay twice. International Paper Co. v. Futhey, 788 S.W.2d 303, 306 (Mo.App. E.D.1990). Point denied.
The judgment is affirmed.
SMITH, P.J., and PUDLOWSKI, J., concur.
NOTES
[1] Landmark's petition also named Del-Mar Redevelopment Corporation (Del-Mar) and Union Sarah Economic Development Corporation (Union Sarah) as defendants. The petition also contains a count for breach of contract directed at Del-Mar and Union Sarah. The trial court's judgment in regard to these two defendants is not contested.
[2] The evidence adduced at trial established Union Sarah was an alter ego for Del-Mar. It also established it was an oversight the contract was executed by Union Sarah rather than Del-Mar. For ease in reading, we henceforth refer to both Del-Mar and Union Sarah as Del-Mar.
[3] The relevant provisions of § 429.012 RSMo 1986 are as follows:

Original contractor to have lien, whennotice required, form ofpenalty for failure to notifyexception to requirement.
1. Every original contractor, who shall do or perform any work or labor upon, or furnish any material, fixtures, engine, boiler or machinery for any building, erection or improvements upon land, or for repairing the same, under or by virtue of any contract, shall provide to the person with whom the contract is made prior to receiving payment in any form of any kind from such person, (a) either at the time of the execution of the contract, (b) when the materials are delivered, (c) when the work is commenced, or (d) delivered with first invoice, a written notice which shall include the following disclosure language in ten point bold type:
NOTICE TO OWNER FAILURE OF THIS CONTRACTOR TO PAY THOSE PERSONS SUPPLYING MATERIAL OR SERVICES TO COMPLETE THIS CONTRACT CAN RESULT IN THE FILING OF A MECHANIC'S LIEN ON THE PROPERTY WHICH IS THE SUBJECT OF THIS CONTRACT PURSUANT TO CHAPTER 429, RSMo. TO AVOID THIS RESULT YOU MAY ASK THIS CONTRACTOR FOR "LIEN WAIVERS" FROM ALL PERSONS SUPPLYING MATERIAL OR SERVICES FOR THE WORK DESCRIBED IN THIS CONTRACT. FAILURE TO SECURE LIEN WAIVERS MAY RESULT IN YOUR PAYING FOR LABOR AND MATERIAL TWICE.
2. Compliance with subsection 1 of this section shall be a condition precedent to the creation, existence or validity of any mechanic's lien in favor of such original contractor.
[4] Landmark failed to provide in the record on appeal the notice actually given to Taco Bell. However, evidence adduced at trial by Landmark's own witness established, and the trial court accordingly found, Landmark did not substantially comply with the mandated statutory language of § 429.012. Landmark does not contest this finding of the trial court on appeal.