### MORGAN WIGHTMAN SUPPLY CO., Plaintiff,

v.

Robert C. SMITH, d/b/a R.C. Smith Construction Company, Robert C. Smith, Elizabeth Joan Smith, Contractors Roofing & Supply Company, Inc., a Corporation, Defendants,

Commerce–Warren County Bank, Defendant/Appellant,

Kaplan Lumber Company, Inc., Defendant/Respondent.

No. 54192.

Missouri Court of Appeals, Eastern District, Division Four.

Jan. 24, 1989.

Darryl L. Hicks, Warrenton, for defendant-appellant.

Gerald Julian Bamberger, Kaplan Lumber Co., St. Charles, for defendant-respondent.

J. Ronald Lacey, Chesterfield, for plaintiff Morgan Wightman Supply Co.

Robert C. Smith & Elizabeth Joan Smith, Lake St. Louis, pro se.

Ervin D. Davis, St. Charles, for defendants Contractors Roofing & Supply, Inc.

SATZ, Judge.

This is an action to enforce a mechanic's lien. Defendant, Commerce–Warren County Bank (Commerce), appeals from the trial court's judgment granting intervenor, Kaplan Lumber Co. (Kaplan), a priority lien against the subject property. We reverse.

In 1985, defendants Robert and Elizabeth Smith (Owners), as tenants by the entirety, acquired title to a tract of unimproved property. The property was acquired to build two apartment buildings. The Owners applied to Commerce for construction financing. Commerce approved two loans totalling $162,000. The Owners jointly executed two promissory notes in the aggregate amount of $162,000 and also executed a deed of trust as security for the loans. Commerce recorded the deed of trust.

Commerce made periodic disbursements to Robert Smith, eventually exhausting the construction funds. Robert Smith used the proceeds to pay for materials, labor and for interest on the loans. Commerce never received any repayment of principal from the Owners.

During construction, Kaplan furnished building materials for the project, maintaining a running account for R.C. Smith Construction Co. but invoicing both "R.C. Construction" and "R.C. Smith." Robert Smith admits that he owes Kaplan $3,169.42 on the account.

The apartment buildings were completed on May 1, 1986. On May 13, 1986, Kaplan served the Owners with the notice of lien-filing required of subcontractors by § 429.100 RSMo 1986.[1] Two weeks later, Kaplan filed its mechanic's lien with the Warren County Circuit Clerk.

In June, 1986, Morgan Wightman Supply Co. (Morgan Wightman), another supplier, filed the present action joining Robert Smith, Elizabeth Smith and Commerce as defendants and seeking a personal judgment against "Robert Smith", enforcement of a mechanic's lien against the "ground, building and improvements" in question and a declaration that its lien was prior to the lien of Commerce. Kaplan filed a motion to intervene as "a defendant" claiming to be "an indispensable party ... by virtue of its mechanic lien on the real estate."[2] The trial court granted Kaplan's motion. Subsequently, Kaplan filed a cross-claim against Robert Smith d/b/a R.C. Smith Construction Co., Robert and Elizabeth Smith and Commerce, seeking a judgment against Robert Smith d/b/a R.C. Smith Construction Co., enforcement of its mechanic's lien and a determination of the rights and interests of the various lien claimants.

---

1. All statutory references are to RSMo. 1986.

2. *See* § 429.280. "All persons claiming any lien or encumbrance upon ... said property ... shall be made parties to [an equitable] action and parties whose interests are diverse may join as plaintiffs therein, but if they do not join as plaintiffs, then they shall be made defendants."

Prior to trial, Morgan Wightman settled its mechanic's claim against Commerce and proceeded only against the Owners. The Owners failed to respond, however, and the court entered a default judgment in favor of Morgan Wightman. The trial court then proceeded to hear Kaplan's cross-claim against Commerce and other defendants.[3]

After a non-jury trial, the court issued Findings of Fact and Conclusions of Law. The court found that Robert Smith d/b/a R.C. Smith Construction Co. had a history of participation in the construction business and that Robert Smith proposed the present apartment buildings be constructed with the implicit consent and agreement of his wife, Elizabeth Smith. The court concluded that Robert Smith d/b/a R.C. Smith Construction Co. was the general contractor for the Owners, Kaplan was a subcontractor, and, as a subcontractor, Kaplan fully complied with the applicable statutory requirements for perfecting its lien. Based upon these findings and conclusions, among others, the court entered a money judgment in favor of Kaplan and against Robert Smith d/b/a R.C. Smith Construction Co., charged the property in question with a priority lien in favor of of Kaplan and ordered the money judgment satisfied, if necessary, by the enforcement of this lien.

On appeal, Commerce attacks the trial court's conclusion that Kaplan is a subcontractor of the Owners. Commerce contends Kaplan is an original contractor, and, as such, Commerce contends Kaplan failed to give the notice to the Owners required of original contractors by § 429.012. This failure, Commerce argues, precluded the "creation, existence or validity" of a lien in Kaplan's favor. § 429.012. We agree.

A person who furnishes work or labor for a building "under or by virtue of a contract with the owner ..., or his agent, ..., contractor or subcontractor" is entitled to a mechanic's lien, provided the person complies with certain enumerated statutory requirements, § 429.010, not the least of which is notice to the owner. §§ 429.012 and § 429.100. The notice required of an original contractor, however, differs from the notice required of subcontractors, materialmen and laborers. An original contractor is required to notify the owner he may be forced to pay twice but he may avoid double payment by obtaining waivers. *Overberg Decorating Center v. Selbah Properties*, 741 S.W.2d 879, 881 (Mo. App.1983); § 429.012. This requirement was enacted in 1974 "to protect owners who might inadvertently pay contractors without making sure that the contractors had paid subcontractors, laborers and materialmen." *L.G. Chiodini, Inc. v. Summer Ridge Dev. Co.*, 751 S.W.2d 378, 379 (Mo. banc 1988). The specific language to be used in the notice is set out in the statute, § 429.012.1.[4] The original contractor must give this notice to the owner before the receipt of payment and no later than delivery of the first invoice. § 429.012.1. Moreover, the notice to the owner is "a condition precedent to the creation, existence or validity of any mechanic's lien in favor of the original contractor" § 429.012.2. A subcontractor, on the other hand, is only required to give the owner "ten days' notice before the filing of the lien...." § 429.100. An original contractor is exempt from this requirement. *Id.*

---

3. Defendant Contractors Roofing and Supply Co. failed to appear to contest Kaplan's cross-claim against it. The trial court also considered the cross-claim of Commerce against the Owners for a deficiency judgment, but found the claim better suited to an action at law. Commerce does not appeal from this portion of the court's order.

4. Subsection [1] requires provision of the following language in bold type:

NOTICE TO OWNER

FAILURE OF THIS CONTRACTOR TO PAY THOSE PERSONS SUPPLYING MATERIAL OR SERVICES TO COMPLETE THIS CONTRACT CAN RESULT IN THE FILING OF A MECHANIC'S LIEN ON THE PROPERTY WHICH IS THE SUBJECT OF THIS CONTRACT PURSUANT TO CHAPTER 429, RSMo. TO AVOID THIS RESULT YOU MAY ASK THIS CONTRACTOR FOR "LIEN WAIVERS" FROM ALL PERSONS SUPPLYING MATERIAL OR SERVICES FOR THE WORK DESCRIBED IN THIS CONTRACT. FAILURE TO SECURE LIEN WAIVERS MAY RESULT IN YOUR PAYING FOR LABOR AND MATERIALS TWICE.

An original contractor is "[o]ne who makes a contract to perform labor or furnish materials with the then owner of the property...." *Home Building Corp. v. Ventura Corp.* 568 S.W.2d 769, 771 (Mo. banc 1978); *Vasquez v. Village Center, Inc.*, 362 S.W.2d 588, 593 (Mo.1962). One who contracts with the original contractor to perform part of the labor or furnish part of the material is usually labeled a subcontractor. See *e.g. Knapp Bros. Mfg. Co. v. Kansas City Stockyards Co.*, 168 Mo.App. 146, 152 S.W. 119, 122 (1912).[5] Thus, determination of a lien claimant's status as an original contractor is typically a simple matter. The court identifies the record owner at the time of the contract in question and decides whether the lien claimant contracted with the owner. *See e.g. Home Building Corp. v. Ventura Corp.*, *supra* at 771. Application of this test to the present dispute, however, is complicated by two facts: The record owners during construction were Robert and Elizabeth Smith as tenants by the entirety and the material sold by Kaplan was invoiced to R.C. Smith Construction Co.

■ As a general rule, a wife's interest in real property held by her with her husband as a tenant by the entirety is not subject to a mechanic's lien absent her active participation in securing the improvements to the property. *See, e.g. E.C. Robinson Lumber Co. v. Lowrey*, 276 S.W.2d 636, 640 (Mo.App.1955) The character of the wife's participation is determined by the extent of her involvement in securing the construction loan, obtaining the labor and directing the actual construction. *Id.* at 640–643; *see e.g., Magidson v. Stern*, 235 Mo.App. 1039, 148 S.W.2d 144, 152 (1941). The wife may be almost totally divorced from this process, and her conduct, thus, can be characterized accurately as passive. *See, e.g. R.J. Kurtz, Inc. v. Field*, 223 Mo.App. 270, 14 S.W.2d 9, 11 (1929). In this situation, the wife cannot be personally indebted to the supplier nor can her interest be charged with a mechanic's lien, because she neither expressly or impli-edly took part in or authorized the securing of the improvements to the property and her husband's conduct cannot be said to be hers. *Id.* On the other hand, the wife may be actively and directly involved in the whole process, not only in dealing directly with the lender but also dealing directly with the supplier or granting her husband complete authority to deal with the supplier on her behalf. In this situation, the wife not only can be charged personally with the debt to the supplier, her interest in the property can be charged with a mechanic's lien. *See e.g. Bryant v. Bryant Construction Co.*, 425 S.W.2d 236, 242 (Mo.App. 1968).

But the facts our courts normally confront cannot be so neatly pigeonholed. In these cases, the wife's conduct lies somewhere between the two extremes and, thus, cannot be characterized accurately as either totally passive, with no resulting liability, or active enough to appoint her husband as her agent with complete authority to bind her personally. Nonetheless, the supplier is still protected by our courts, but to a limited extent.

■ As previously noted, the supplier is entitled to a lien if he furnishes work or labor to the owner or his "agent" § 429.012. Through creative interpretation the "agent" referred to is not limited "to a person whose agency is sufficient in its scope to bind the owner personally for the labor or materials furnished". *Ward v. Nolde*, 259 Mo. 285, 168 S.W. 596, 599 (1914). It may include "a person with such limited authority as to be unable to bind his principal personally for the work, but who at the same time, by an exercise of the limited authority given, will transmit to the person furnishing the material a right to a lien upon the owner's premises." *Id.* at 600. Thus, a wife's conduct between the two extremes is held to impliedly appoint her husband as her agent with the limited authority to subject her interest to a mechanic's lien but not bind her personally for

---

5. But the term subcontractor is broad enough to include one who contracts with another subcontractor and may be a materialman or mechanic.

§ 429.100. *See, e.g. Mississippi Woodworking Co. v. Maher*, 273 S.W.2d 753, 755 (Mo.App. 1954).

the labor or material furnished. *See e.g. Bryant v. Bryant, supra.* at 242; *Magidson v. Stern, supra.* at 151–152. More precisely, the wife's conduct is held to empower her husband, as her agent, to transmit or create a right in the supplier to a lien on the wife's interest. *Magidson v. Stern, supra; Ward v. Nolde, supra.* [6]

■ The present fact situation is similar to this fact pattern. Here, Elizabeth Smith, the wife, did not deal directly with Kaplan. She did, however, take part in securing the construction loan by signing the necessary promissory notes and deed of trust. She knew the money so obtained was to be used for the construction of two apartment buildings on the jointly held property. She had signed on other projects her husband had built, and, although he said, she "was not involved in the business," he did say she "worked for" R.C. Smith d/b/a R.C. Construction Company. Thus, her conduct was sufficient to empower her husband, Robert Smith, to transmit the right to Kaplan to charge her interest in the jointly held property to a mechanic's lien. *See e.g. Bryant v. Bryant, supra.; E.C. Robinson Lumber Co. v. Lowrey,* 276 S.W.2d 636, 641–643 (Mo.App.1955); *Magidson v. Stern, supra.*

Arguably, in this context, the husband, Robert Smith, in his relationship to Kaplan, is similar to the relationship between an original contractor and a subcontractor, i.e. the original contractor cannot create a debtor-creditor relationship between the wife and the subcontractor but can give to the subcontractor the right to a lien on the wife's interest. *E.g. Ward v. Nolde,* 168 S.W. 596, 600 (Mo.1914). Following this analysis insofar as the joint interest of Elizabeth and Robert Smith, as wife and husband, is concerned, Kaplan would be a subcontractor who gave proper notice. This resolution of the issues protects Kaplan who dealt properly with Robert Smith. It also fits comfortably within the mandate to construe our mechanic's lien statutes liberally in favor of the supplier. *E.g. Mitchell Engineering Co. v. Summit Realty Co.,* 647 S.W.2d 130, 135 (Mo.App. 1982).

■ This solution is deceptive, however. Kaplan is entitled to a mechanic's lien if, but only if, he supplied material to the "owner" or the owner's "agent" "under or by virtue of a contract." § 429.010. There is no question that Robert Smith, individually or as sole proprietor, entered into a contractual relation with Kaplan and, thus, subjected his interest in the property to a lien. To subject his wife's interest to a lien—a lien neither party disputes—it is consistent and sensible to base the creation of this lien on a contractual relation between Robert Smith as agent for his wife and Kaplan. This is the reasoning our courts follow. To create the lien, our courts consider or characterize the kind of relationship between Kaplan and Robert Smith, either tacitly or expressly, as one created by a contract. *See, e.g. Magidson v. Stern, supra.* at 203. (tacit) *Bryant v. Bryant Construction Co., supra* at 203 (express). Consequently, Kaplan contracted both with Robert Smith, individually and as agent for his wife. In so doing, Kaplan contracted with the Owners of the property and is, therefore, an original contractor.

Moreover, in this commercial scenario, treating the supplier as an original contractor protects both the owners, the husband and wife, and the supplier as the present mechanic's lien statutes were designed to do. Normally, the husband and wife are not in the construction business and are inexperienced property owners dealing with the supplier of labor or materials. The reason for characterizing the supplier as an original contractor in this context is not

---

**6.** These legal relationships, between the wife and husband and the supplier, are unique and peculiar to the enforcement of a mechanic's lien. The relationship between the wife and husband is not a principal-agent relationship in the usual sense, nor is the relationship between the supplier and the husband, individually as well as agent for the wife, a contractual relationship in the usual sense. If these were the usual relationships, the wife, along with her husband, would be personally indebted to the supplier and her interest, along with her husband's interest in the tenancy by the entirety, would be subject to the supplier's mechanic's lien.

only because the supplier may fit the definition of an original contractor but also because being so treated requires the supplier to give the disclosure notice required of an original contractor by § 429.012, which warns

> inexperienced property owners of the danger to them which lurks in the mechanic's lien statute. An inexperienced property owner in the past was all too likely to enter into a contract with a builder ... and upon completion of the work naively make payment to the builder of the full agreed price. Subsequently the property owner might find to his sorrow that the builder had left employees, sub-contractors and materialmen unpaid, and the owner ... might be forced to pay a second time to the unpaid lien claimants.

*BCI Corp. v. Charlebois Const. Co.,* 673 S.W.2d 774, 779 (Mo. banc 1984).

The supplier is likewise protected. He normally deals only with the husband. Insofar as the supplier is concerned, the wife is comparable to an undisclosed principal. If she grants her husband complete authority to contract for her, there is no question the supplier will be held to be contracting with the owners and, therefore, held to be an original contractor. If the wife grants the husband only the limited authority to bind her interest with a lien, the contractor should still be held to be an original contractor. To do otherwise would place an unbearable burden on the supplier. He would be saddled with the impossible task of determining just what authority the husband has been given by the wife, the undisclosed principal, in order to know whether to give the notice required of an original contractor or the one required of a subcontractor.

■ Kaplan seeks to avoid the characterization as an original contractor by interposing the R.C. Smith Construction Co. as the original contractor between Kaplan and the Owners. Thus, Kaplan contends it contracted "solely with Robert Smith as principal of R.C. Smith Construction [Co.], a business entity separate and distinct from [the Owners]."

The trial court's Findings of Fact and Conclusions of Law are consistent with this contention. The court found that the materials supplied by Kaplan were charged to the R.C. Smith Construction Co. account and also found that Robert Smith, "with the implied consent and agreement of his wife ...", "proposed that a fourplex apartment building be constructed on the jointly held property by the R.C. Construction Co." From these, and other facts, the court, in its Conclusions of Law, concluded that:

2. Defendant Kaplan Lumber Company was a subcontractor. Defendant Robert C. Smith, d/b/a Smith Construction Company was a general contractor for Defendant landowners, Robert C. Smith and Elizabeth Joan Smith.

3. The fact that Defendant Kaplan contracted only with Robert C. Smith, d/b/a Smith Construction Company does not prevent a lien from attaching to the real property held as tenants by the entirety by Mr. and Mrs. Smith. Such would be the case only if the husband and wife were general contractors and only one spouse dealt with the supplier Kaplan.

4. The implied authority found to exist by this Court was the authority granted by Elizabeth Joan Smith to her husband Robert C. Smith to use his construction company, i.e. R.C. Smith Construction Company, to erect the building on the jointly held property.

We accept the court's Findings of Fact. We find, however, the court erroneously applied the law. *Murphy v. Caron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

Normally, the existence of a subcontractor presupposes a contract between an original contractor and the owner. *Paradise Homes, Inc. v. Helton,* 631 S.W.2d 51, 54 (Mo.App.1981); *Mound City Supply Co. v. Woodland Development Corp.,* 414 S.W. 2d 805, 807 (Mo.App.1967). Understandably, in the present case, neither Kaplan nor the court find that a contract for construction existed between R.C. Smith Construction Co., their designated original con-

tractor, and the Owners, Robert and Elizabeth Smith. Quite simply, none existed.

Admittedly, the record does disclose that the R.C. Smith Construction Co. was a viable business, with employees, a company checking account and intermittent profits. But this company was a sole proprietorship. By definition, a sole proprietorship has a single owner and is characterized by "the complete identity of the business entity with the individual doing business." 1 Cavitch, *Business Organizations* § 4.01 (1988). Unlike a corporation, a sole proprietorship has no legal existence separate from the owner, and the contracts of a sole proprietorship are the contracts of the owner. Henn and Alexander, *Laws of Corporations and Other Business Enterprises*, § 18 at 58 (3d ed. 1983). Thus, any contract of the R.C. Smith Construction Co. would be the contract of Robert Smith, and a construction contract between the company and the Owners, Robert and Elizabeth Smith, would be a contract between Robert Smith, as the contractor, and the Owners, Robert Smith and Elizabeth Smith.

Arguably, this kind of contract can exist. Robert Smith being on both sides of the contract would not be contracting with himself; "he [would be] merely contracting with others." 1 *Corbin On Contracts*, § 55 (1963); Restatement (Second) Of Contracts, § 11 (1979).[7] Nonetheless, the record simply does not show a construction contract existed between R.C. Construction Co. and the Owners, Robert Smith and Elizabeth Smith.

The trial court did not set out the operative facts from which it infers that Elizabeth Smith consented and agreed to the building of the apartments by the R.C.

Smith Construction Co. The Court may have inferred this from the fact Elizabeth joined in the execution of the instruments to secure the construction loan, knowing the loan was to be used for purchase of the property and the building of apartments. But, at best, this only supports the inference that Elizabeth Smith authorized Robert Smith to use the R.C. Smith Construction Co. as the construction company to build the apartments. It does not show a contractual relation was created between Elizabeth and Robert Smith, as tenants by the entirety, and the R.C. Construction Co.

Contracts are created by promissory expression. The expression of the promise may be verbal or by conduct. *Kosher Zion Sausage Company of Chicago v. Roodman's, Inc.*, 442 S.W.2d 543, 546 (Mo.App. 1969). When the parties express their promises orally or in writing, the contract is labeled: express. *Kohn v. Cohn*, 567 S.W.2d 441, 446 (Mo.App.1978). When they manifest their promises by conduct, the contract is labeled: implied in fact. *Id.* The only difference between the two is in the manner of manifesting mutual assent. *Bailey v. Interstate Airmotive, Inc.*, 219 S.W.2d 333, 338 (Mo.1949). In either case, the essential question is the degree of effectiveness of the expression used.[8]

There is no evidence Robert Smith, himself, and as agent for Elizabeth actually contracted with the construction company. No writing has been proffered to show the existence of such a contract. Nor was there a showing of an oral contract. Elizabeth did not testify. Robert testified he was "absolutely certain" he had no contract with his wife. Thus, admittedly there was no express contract between the con-

---

7. Corbin explains:

> An individual whose name appears on both sides of a contract transaction is not contracting with himself; he is merely contracting with others. He gets no rights against himself and owes himself no duties; neither law nor equity ever recognized such relations. His rights and duties with respect to the others are determined just as their rights and duties are determined.

We do not imply we accept this explanation, particularly where the other contracting party is the wife.

8. On the other hand, a contract "implied in law" or "quasi-contract" is "not a contract at all but an obligation imposed by law to do justice even though it is clear that no promise was ever made or intended." Calamari and Perillo, *Contracts* § 1–12 (2d ed. 1977). This non-contractual obligation is treated procedurally as if it were a contract, but its principal function is to prevent unjust enrichment. *Id.* Unjust enrichment by the R.C. Construction Company at the expense of Elizabeth and Robert Smith is not an issue here.

struction company, as one party, and the Owners, Robert and Elizabeth Smith, as the other party.

Nor does the conduct of either or both Elizabeth and Robert Smith support a contract implied in fact. The contract can only be implied where the conduct of the parties supports a reasonable inference of a mutual understanding that one party perform and that the other party compensate for such performance. *Commercial Lithographing Co. v. Family Medical, Inc.*, 695 S.W.2d 936, 939 (Mo.App.1985). Robert Smith testified he obtained disbursements from Commerce under the loan agreements, but it is not clear in what capacity or legal status he did so. Moreover, the president of Commerce Bank testified that his records made no references to the construction company. Robert and Elizabeth acted together to acquire the land and to obtain the money used in construction. Robert used his construction company to build the apartments. However, their conduct does not manifest a mutual understanding that the disbursements be received from the Smiths as compensation for the performance of the construction company.

■ Consideration of law and equity may play as large a part in finding a promise by inference of fact as it plays in finding a quasi-contract without such an inference. Nonetheless, there still must be some word or conduct—some operative fact —to support the implied promise, and here there is none. At best, these facts only support an implied consensual relationship between Elizabeth and Robert; and, even if this consensual relationship "authorized" Robert Smith only to use the R.C. Smith Construction Company to build the apartments, Robert Smith and the R.C. Smith Construction Company remain a single legal entity. *Cavitch, supra; Henn and Alexander, supra.* Thus, for the purpose of our mechanic's lien statute, this consensual relationship simply makes Robert the implied agent for Elizabeth, with the power

to transmit to or create in Kaplan the right to lien on Elizabeth's interest in the property.[9] This relationship, as we have already concluded, does not make Kaplan a subcontractor.

Arguably, Kaplan finds itself in its present legal position through no fault of its own. But Kaplan, understandably, did not plead and does not contend the Smiths' conduct "estops" them, and, in turn, Commerce, from denying Kaplan is a subcontractor.

Kaplan also contends the mechanic's lien statutes should be liberally construed to protect it as materialman. In particular, Kaplan argues that § 429.012 is intended to protect the Owners, not Commerce, and, thus, insofar as the Owners are concerned, Kaplan contends it has complied with all applicable statutory requirements. We disagree.

Admittedly, our legislature enacted Chapter 429 to provide mechanics and materialmen with an effective means of securing payment for labor and materials used to improve another's property. *Home Building Corp. v. Ventura Corp., supra.* 568 S.W.2d at 773 (Mo. banc 1978). Thus, the mechanic's lien statutes are remedial in nature and should be construed as favorably to mechanics and materialmen as its terms will permit. *Mitchell Engineering Co. v. Summit Realty Co.*, 647 S.W.2d 130, 135 (Mo.App.1982). Yet this rule of construction does not relieve a lien claimant from reasonably and substantially complying with the statutory requirements. *Id.*

■ Section 429.012 makes the notice to the owner a condition precedent to the "creation, existence and validity" of an original contractor's lien. Kaplan relies on *BCI Corp. v. Charlebois Const. Co.*, 673 S.W.2d 774 (Mo. banc 1984) and *Overberg Decorating Center, Inc. v. Selbah Properties*, 741 S.W.2d 879 (Mo.App.1987) to escape the strictures of this statute. *BCI*

---

9.    "Although agency is intrinsically consensual, it is not necessarily contractual. Consideration is not essential; one acting for another at the other's direction is an agent although he

receives nothing for so acting. A husband can be an agent for his wife even where he cannot contract with her."
Seavey, *Agency,* § 3A (1964).

*Corp.* and *Overberg* are, however, distinguishable from the present case.

In *BCI Corp.*, an employee of the property owner sought to enforce a mechanic's lien, and the Court declined to impose the notice requirement of § 429.012 on the employee. The Court said:

> The necessity for [the] protection [of the disclosure notice] to the property owner presupposes that the "original contractor" is one who is likely to, or at least may, incur obligations in connection with the work to his own employees, sub-contractors or materialmen. Only if the contractor does incur such obligation to second tier parties not in direct privity with the property owner, is there any ... reason to give [the owner] special notice in that regard.

The Court reasoned that an employee would not incur obligations to second tier parties, exposing an owner-employer with double payment. *Id.* at 780. Kaplan does not fit this "employee" exception, and to extend the exception here would emasculate the statute.

In *Overberg*, the original contractor actually provided the owner with the written equivalent of the statutorily defined notice. *Overberg, supra.* at 881. The Court expressly limited its approval of this "notice" to the facts of that case. *Id.* at 881.

Contrary to Kaplan's position, our courts strictly enforce the notice requirement of § 429.012. *Financial Design Consultants, Inc. v. McCarver*, 712 S.W.2d 738, 740 (Mo.App.1986); *Kenny's Tile & Floor Covering, Inc. v. Curry*, 681 S.W.2d 461, 472 (Mo.App.1984); *R.J. Stephens Drywall & Painting Co. v. Taylor–Morley–Simon, Inc.*, 628 S.W.2d 374, 375 (Mo.App.1982). In *R.J. Stephens*, this Court rejected the argument of an original contractor that the policy of liberal construction should override technical non-compliance with § 429.012.

> This argument implies there is something to construe; there is not. The statute requires the notice to owner to make it a condition precedent to creating the lien. The language is plain and unambiguous and requires no construction. *Id.* at 375.

We also reject Kaplan's additional argument that only the landowner is permitted to raise the issue of non-compliance with § 429.012. Subsequent owners may challenge the validity of an original contractor's lien for failure to provide the previous owners with the statutory notice. *Structo Corp. v. Leverage Investment Enterprises, Ltd.*, 613 S.W.2d 197, 201 (Mo. App.1981). Moreover, the subsequent owner need not demonstrate harm or prejudice to its predecessor. *R.J. Stephens Drywall & Painting Co. v. Taylor–Morley–Simon, Inc., supra,* at 375.

Accordingly, we reverse the judgment granting Kaplan a priority lien on the property in question. We remand this case to the trial court to enter a judgment consistent with this decision.

STEPHAN, J., concurs,

SMITH, P.J., dissents in separate dissenting opinion.

SMITH, Presiding Judge, dissenting.

I respectfully dissent.

The scholarly discussion of the law set forth in the majority opinion correctly states the methods utilized by the courts in analyzing the relationships in these lien cases. My difficulty with the result reached by the majority is in the failure to treat the relationship between the owner of the property, the entireties entity, and Robert Smith, a sole proprietorship, as one between separate legal entities.

Robert Smith and Elizabeth Smith owned the real estate as a tenancy by the entireties. Such a tenancy creates a legal entity distinct from the individuals who make it up. "The distinctive characteristic of an estate by the entireties is that it is deemed to be owned by a single entity, the marital community." *United States Fidelity and Guaranty Company v. Hiles*, 670 S.W.2d 134 (Mo.App.1984) [1–4]. Neither of the individuals which comprise the entity can deal with the property as a sole owner such as by individually selling, mortgaging, or encumbering the property. Neither can destroy the entireties estate or the interests

of the entireties estate without the agreement and consent of the other. *Id.* Robert Smith operated a construction business as a sole proprietor of that business. He bore sole legal responsibility for that business, was responsible for its debts, and was entitled to its profits. Elizabeth Smith had no legal interest in that sole proprietorship.

I agree with the majority and the trial court that Elizabeth Smith by obtaining the construction loan and by authorizing her husband to develop the complex granted to Robert Smith the authority to subject her interest in the real property to liens. I believe the record further supports the finding of the trial court that Elizabeth and Robert Smith authorized Robert Smith, as a representative or agent of the entireties entity to contract for the construction of the apartment complex. As the agent of the entireties. entity he contracted with Robert Smith, sole proprietor, a different legal entity, to build the complex. The entireties entity, as owner, contracted with Smith, a sole proprietorship, as general contractor. Smith, as a sole proprietorship, in turn contracted with Kaplan to supply materials needed by Smith as general contractor for construction of the apartments. Kaplan was therefore a subcontractor and it properly complied with the law in asserting its lien. This case differs from the usual lien situation involving entireties ownership, because the Smith's have chosen to inject Robert Smith, as a sole proprietor, between themselves as owners and Kaplan as a supplier. Had they chosen a different general contractor there would be no question of Kaplan's status as a subcontractor. I do not believe the choice of Smith changes Kaplan's status.

The majority rejects this analysis, at least in part, upon a finding that no contract, express or implied, existed between the entireties entity and the sole proprietorship. To the extent this rejection is based upon the proposition that Robert Smith as agent for the owners lacked legal capacity to contract with Robert Smith as sole proprietorship, I believe such a holding conflicts with the concept that two distinct legal entities are in fact involved as I have heretofore stated. To the extent that the rejection is based upon the absence of evidence of an actual contractual relationship between the owners and the sole proprietorship, I believe it erroneously views the evidence.

The law has been stated succinctly in *Follman Properties Company v. Henty Construction Co., Inc.,* 664 S.W.2d 248 (Mo.App.1983) [1, 2]:

"A contractual relationship may be established without a written contract where the circumstances and the acts and conduct of the parties support a reasonable inference of a mutual understanding and agreement that one party perform and that the other compensate for such performance.... The agreement between the parties arises from their intention, implied or presumed from their acts, where there are circumstances which, according to the common course of dealing and the common understanding of men, show a mutual intent to contract."

*See also, Bailey v. Interstate Airmotive, Inc.,* 358 Mo. 1121, 219 S.W.2d 333 (1949) [4, 5, 6]; *Roper v. Clanton,* 258 S.W.2d 283 (Mo.App.1953), [5, 6].

The land in question was owned by the Smith's by the entireties. It was acquired for the purpose of building apartments to produce rental income for the owner, the entireties entity. A loan was obtained by the owner for the purpose of constructing the apartments. This construction was to be done by the Robert Smith sole proprietorship, an established company with a number of employees which had been in the construction business "periodically" for twenty-three years. Elizabeth Smith was "not really" involved in the business of the sole proprietorship. Robert Smith had developed at least one project in which his wife had no ownership interest. Robert Smith through his construction company had dealt with Kaplan for at least twenty-three years. Elizabeth Smith was aware of her husband's construction activities. The money from the construction loan obtained by the entireties entity was paid to Robert Smith who utilized it to pay for construc-

**496**

tion by his solely owned company. Under these facts it appears clear that Robert Smith Construction Company was building the apartments for the entireties entity and the conduct and acts of the parties create a reasonable inference of an agreement that he do so. We can from that imply the existence of a contract.

I would affirm the judgment of the trial court.