Craig M. McKENNEY, d/b/a MCM
Restoration Company, Plaintiff–
Appellant,

v.

JOPLIN UNION STATION, INC., et
al., Defendants–Respondents.

No. 18418.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 13, 1993.

Walter E. Williams, Joplin, for plaintiff-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., M. Melissa Manda, Asst. Atty. Gen., Jefferson City, for defendants-respondents Dept. of Natural Resources and David A. Shorr, trustee.

Bruce N. Secrist, Joplin, for defendant-respondent Rainey Roofing and Sheet Metal Co., Inc.

CROW, Judge.

Craig M. McKenney ("McKenney"), doing business as MCM Restoration Company, sued Joplin Union Station, Inc., ("Union Station") and others, seeking a $43,057.50 judgment against Union Station and a mechanic's lien on property owned by it. The trial court awarded McKenney a money judgment as prayed, but denied a mechanic's lien because McKenney was an original contractor and failed to comply with the notice requirement of § 429.012, RSMo 1986.[1] That section reads, in pertinent part:

 1. Every original contractor, who shall do or perform any work or labor upon, or

---

1. Section 429.012, RSMo 1986, has since been amended by Laws of Missouri 1992, S.C.S.H.C.S.H.B. 1434 and 1490, pp. 357–77. The amendment is immaterial here.

furnish any material ... for any building, erection or improvements upon land, or for repairing the same, under or by virtue of any contract, shall provide to the person with whom the contract is made prior to receiving payment in any form of any kind from such person, (a) either at the time of the execution of the contract, (b) when the materials are delivered, (c) when the work is commenced, or (d) delivered with first invoice, a written notice which shall include the following disclosure language in ten point bold type:

### NOTICE TO OWNER

**FAILURE OF THIS CONTRACTOR TO PAY THOSE PERSONS SUPPLYING MATERIAL OR SERVICES TO COMPLETE THIS CONTRACT CAN RESULT IN THE FILING OF A MECHANIC'S LIEN ON THE PROPERTY WHICH IS THE SUBJECT OF THIS CONTRACT PURSUANT TO CHAPTER 429, RSMo. TO AVOID THIS RESULT YOU MAY ASK THIS CONTRACTOR FOR "LIEN WAIVERS" FROM ALL PERSONS SUPPLYING MATERIAL OR SERVICES FOR THE WORK DESCRIBED IN THIS CONTRACT. FAILURE TO SECURE LIEN WAIVERS MAY RESULT IN YOUR PAYING FOR LABOR AND MATERIAL TWICE.**

2. Compliance with subsection 1 of this section shall be a condition precedent to the creation, existence or validity of any mechanic's lien in favor of such original contractor.

. . . .

McKenney appeals, insisting he was a subcontractor and therefore not required to give the notice. The appeal hinges on that issue. Resolution of it requires a narrative of the pertinent facts.

With commendable thoroughness, the trial court made extensive findings of fact. This opinion's account of the facts is drawn primarily from unchallenged findings by the trial court, supplemented by facts established by uncontradicted evidence.

In April, 1986, a Missouri corporation, Historic Properties, Inc., ("Historic Properties") was formed. Nancy Allman ("Allman") was one of its shareholders, directors and officers. About a month after Historic Properties was incorporated, it acquired ownership of the property which is the subject of this litigation. For convenience, we henceforth refer to the property as "the Depot."

Union Station's corporate existence began March 1, 1989, when it was issued a Missouri certificate of incorporation. Allman was one of its shareholders, directors and officers.

On March 31, 1989, Union Station made a contract with McKenney wherein he agreed to perform certain work and furnish certain materials to restore the Depot (still owned by Historic Properties). Allman signed the contract on behalf of Union Station as its president. McKenney commenced work April 10, 1989. He never provided Historic Properties or Union Station any notice in the language set forth in § 429.012, RSMo 1986.

On April 24, 1989, Union Station made a contract with Rainey Roofing and Sheet Metal Company, Inc. ("Rainey") wherein Rainey agreed to perform work on the roof of the Depot (still owned by Historic Properties). The contract was signed on behalf of Union Station by Allman, its president.

On May 17, 1989, Union Station, by its president, Allman, entered into a "loan agreement" with the Missouri Department of Natural Resources ("DNR") wherein DNR agreed to loan Union Station $175,000, to be secured by a deed of trust on the Depot.

On May 31, 1989, the agreement referred to in the preceding paragraph was consummated. Historic Properties, by its president, Allman, conveyed the Depot by warranty deed to DNR. DNR immediately conveyed the Depot to Union Station. Union Station, by its president, Allman, executed a deed of trust on the Depot in favor of DNR, securing the $175,000 loan. The instruments described in this paragraph were recorded June 28, 1989.

McKenney continued working on the Depot per his contract with Union Station. On June 6, 1989, Union Station paid McKenney $37,440 from the loan proceeds. On October 13, 1989, Union Station paid McKenney $30,000 from the loan proceeds.

Rainey was also working on the Depot per its contract with Union Station. Ultimately, Union Station owed Rainey $58,981. Union Station made a promissory note in that amount payable to Rainey, secured by a second deed of trust on the Depot dated May 25, 1990, and recorded September 10, 1990.

McKenney's work continued until June 24, 1991, at which time the work required by his contract was substantially completed. The balance due him was $43,057.50, which became payable July 16, 1991.

McKenney received no payment, so he filed this suit July 29, 1991. His petition prayed for (a) judgment against Union Station in the amount due, with interest at nine percent per annum from July 16, 1991, (b) a mechanic's lien on the Depot in that amount, and (c) a determination that the mechanic's lien is superior to the deeds of trust in favor of DNR and Rainey.

■ At trial, McKenney presented Allman as a witness. Her testimony included this:

Q. By what authority ... did Joplin Union Station ... enter into these contracts with these ... contractors ... on land that was not owned by the Joplin Union Station, Inc.?

A. I had the authority from Historic Properties, Incorporated.

Q. Would you explain to the Court what that authority ... was?

A. ... we were in a transition period and the State was requiring various documents and so forth, and those were exchanging back and forth. And so we had not closed on the property. And Historic Properties, Incorporated was still the owner of the property, and so Joplin Union Station entered into, as a general contractor, a contract with these ... entities.

Q. Joplin Union Station, Inc. was acting as the general contractor for Historic Properties, Inc.; is that true?

A. Yes.

. . . .

Q. ... you did not have any written contract between Joplin Union Station, Inc.

and Historic Properties, Inc.; is that true?

A. Yes.

. . . .

Q. ... you used the term "general contractor." Could you please explain to us what your understanding of a general contractor was in March and April of 1989 when you were entering into contracts regarding the restoration project?

A. At that point, primary emphasis would have been on coordination. One would want to make sure that what was being done to the exterior, it was timed so that it would not interfere with another aspect of it in order to keep from having damage to the property.

Q. So when you are speaking of coordination, you're speaking, really, of timing as to when people would begin various work projects on that site?

A. You would be concerned with that, but you would also be concerned with making sure that something was not being damaged as far as an artifact. And the reason I say that is because apart from [DNR's] concern with historic buildings, there would have also been the concern for the historic tax credit, which were a separate issue.

McKenney also testified at trial. His testimony included this:

Q. Mr. McKenney, when you entered into the contract, ... you never did any independent investigation to determine who the owner of record was of the ... Depot, did you?

A. No, I didn't. I asked the architects who told me about the project and, you know, I was going to ask them where the money was coming from, and their reply was the State.

. . . .

Q. ... Who did you believe owned the property when you entered into the contract with Joplin Union Station, Inc.?

A. I believed that the State did. . . .

The trial court, citing Allman's testimony, concluded:

Allman had authority from Historic Properties, Inc., to enter the contract [with McKenney]. Consequently, [McKenney] contracted with Historic Properties, Inc., through Nancy Allman as agent. In so doing, [McKenney] contracted with the owners of the property and is an original contractor.

This conclusion is contrary to the undisputed fact that the contract signed by McKenney named the "Owner" as Union Station, not Historic Properties. Indeed, the trial court's findings of fact include a finding that McKenney's contract was with Union Station. There is no evidentiary support for a conclusion that McKenney made a contract with Historic Properties.

The trial court relied on *Morgan Wightman Supply Co. v. Smith,* 764 S.W.2d 485 (Mo.App.E.D.1989), in concluding McKenney contracted with Historic Properties. That case does not present circumstances comparable to those here. In *Morgan Wightman,* land was owned by a married couple as tenants by the entirety. The husband, individually, was in the construction business. The couple arranged construction financing to build apartments on the land. The husband obtained building supplies from a materialman, but failed to pay for them. The materialman sought a mechanic's lien. Because the materialman failed to give the notice called for by § 429.012, he argued he was a subcontractor and thereby excused from that requirement.

The Eastern District of this Court said:
An original contractor is "[o]ne who makes a contract to perform labor or furnish materials with the then owner of the property...." *Home Building Corp. v. Ventura Corp.* 568 S.W.2d 769, 771 (Mo. banc 1978); *Vasquez v. Village Center, Inc.,* 362 S.W.2d 588, 593 (Mo.1962). One who contracts with the original contractor to perform part of the labor or furnish part of the material is usually labeled a subcontractor. *See e.g. Knapp Bros. Mfg. Co. v. Kansas City Stockyards Co.,* 168 Mo.App. 146, 152 S.W. 119, 122 (1912). Thus, determination of a lien claimant's status as an original contractor is typically a simple matter. The court identifies the record

owner at the time of the contract in question and decides whether the lien claimant contracted with the owner.

764 S.W.2d at 489 (footnote omitted).

The court in *Morgan Wightman* held the wife's participation in the project was sufficient to empower her husband to subject her interest in the land to a mechanic's lien. *Id.* at 490[4]. The court further held the materialman contracted with the husband, individually, and with the husband as agent for the wife. *Id.* at 490[5]. Therefore, the materialman had a contract with the owners of the land and was an original contractor. *Id.* The court rejected the materialman's theory that the husband, being a contractor himself, was a separate entity from the entireties entity which owned the land. Pointing out that the existence of a subcontractor presupposes a contract between an original contractor and the owner, the court held there was no evidence that the husband, individually, contracted with himself and his wife to construct the apartments. *Id.* at 491–92.

Here, Historic Properties owned the Depot when Union Station made the contract with McKenney. Although Allman was president of both Historic Properties and Union Station, McKenney's contract was not with Allman. It was with Union Station. Allman signed the contract on behalf of Union Station as its president, not in her individual capacity and not on behalf of Historic Properties as its president.

It is inferable Historic Properties had no objection to Union Station entering into the McKenney contract, anticipating ownership of the Depot would be transferred from Historic Properties to Union Station. It is also inferable (as found by the trial court) that Allman had authority from Historic Properties to enter into the contract with McKenney for work on the Depot. However, that is not to say Allman had authority from Historic Properties to make a contract between it and McKenney for such work. Were that so, Allman would presumably have made the contract that way. Nothing in the record indicates Historic Properties intended to be a party to the McKenney contract. The only logical conclusion is that Allman had authori-

ty from both Historic Properties and Union Station to make a contract between Union Station and McKenney for work on the Depot. The record is destitute of support for a holding that McKenney's contract was with Historic Properties.

The only possible theory that would support a conclusion that McKenney's contract was with Historic Properties would be that Union Station was the alter ego of Historic Properties. None of the Respondents who filed a brief[2] relies on alter ego. Apparently that is because there is arguably no evidence to support such a contention. *See: Dave Kolb Grading, Inc. v. Lieberman Corp.*, 837 S.W.2d 924, 936–37[21] and [22] (Mo.App. E.D.1992).

In sum, denial of McKenney's prayer for a mechanic's lien cannot be upheld on the theory that he made a contract with Historic Properties and was, as a result, an original contractor.

■ That does not mean McKenney was a subcontractor. Superficially, Allman's testimony that Union Station acted as general contractor for Historic Properties appears to support a finding that McKenney was a subcontractor (as his contract was with Union Station). However, as explained in *Morgan Wightman,* an original contractor is one who makes a contract to perform labor or furnish materials with the then owner of the property. 765 S.W.2d at 489. *Accord: Dave Kolb,* 837 S.W.2d at 936[20]. There is no evidence that Historic Properties made a contract with Union Station wherein the latter agreed to perform labor or furnish materials for restoration of the Depot. Allman's testimony does not demonstrate Union Station was an original contractor with Historic Properties as that term is defined in mechanic's lien cases. Because the record cannot support a finding that Union Station was an original contractor with Historic Properties, McKenney's contract with Union Station cannot make him a subcontractor.

■ As an alternative basis for concluding McKenney was an original contractor (and therefore obliged to give notice per § 429.012

in order to perfect a mechanic's lien), the trial court held Union Station was the equitable owner of the Depot at the time McKenney signed the contract (March 31, 1989) and at the time he commenced work (April 10, 1989). In support of this determination, the trial court relied on an excerpt from Allman's deposition wherein she recounted that at a meeting in February, 1989, attended by herself, McKenney, the architect, and others, it was disclosed that when DNR "completed the paperwork," the Depot would be transferred from Historic Properties to Union Station.

The facts here are analogous to *Vasquez v. Village Center, Inc.*, 362 S.W.2d 588 (Mo. 1962), cited by the trial court as authority for its holding. There, a corporation was engaged in developing real estate. One Bilhorn and two other individuals constituted the board of directors and officers, and owned all the stock. The trio planned to develop a shopping center, to be owned and operated by a subsidiary corporation which, when chartered, would be named Village Center, Inc. Land for the project was acquired in the name of one of the trio and his wife. Later, it was transferred to the existing corporation. The trio met with an excavating contractor regarding preparation of the site for the project. The contractor was employed on behalf of Village Center, Inc. (the not-yet-chartered corporation) at an agreed hourly rate. The contractor began work, receiving directions from Bilhorn. Village Center, Inc., was thereafter chartered and took title to the property while the contractor was working. The contractor completed the job in August, 1956. The land was ultimately conveyed to one Dooly in December, 1956.

The contractor was not paid, so he sued for a money judgment against Village Center, Inc., and mechanic's lien on the land (titled in Dooly). Trial produced a money judgment and mechanic's lien for the contractor. On appeal, Dooly argued Village Center, Inc., was not a party to the excavation contract in that Village Center, Inc., did not exist when the contract was made. The Supreme Court of Missouri disagreed, holding that when Vil-

2. Respondents filing briefs were DNR and the trustee of its deed of trust, and Rainey. Neither Union Station nor Historic Properties filed a brief.

lage Center, Inc., came into existence, it became a party to the contract because that was the understanding of the contractor and the three developers. *Id.* at 592[6]. The opinion continued:

> Further, the evidence is such that no other conclusion is reasonable than that Village Center ratified and adopted the contract theretofore made by its incorporators and accepted the benefits of that contract and became liable under it. Under the evidence in this case [the contractor] could not have obtained a personal judgment for the amount due him for labor performed under his contract against anyone other than Village Center, Inc. Thus Village Center was a party to the contract, it was the proper party to defend against the claim (in the event it was not just or proper), and it was a party against whom a personal judgment could be rendered.

*Id.* (citations omitted).

The Supreme Court in *Vasquez* was also required to decide whether the contractor was an original contractor, as he filed his lien statement within the time allowed original contractors but after the deadline for subcontractors. *Id.* at 593. The Supreme Court held the contractor was an original contractor. *Id.*

The facts in the instant case supply stronger support for a holding that McKenney was an original contractor with Union Station than the facts pertinent to the same issue in *Vasquez.* Here, Union Station was in existence when McKenney signed the contract, and Union Station was the party with whom McKenney contracted. In *Vasquez*, Village Center, Inc., was not in existence when the excavation contract was made.

Furthermore, Union Station was in existence when the work commenced, and became owner of the Depot while the work was in progress. In *Vasquez*, Village Center, Inc., did not exist when the work commenced.

The work McKenney was to perform was specified in the contract between him and Union Station. There is no evidence that any other entity contracted with Union Station to perform that work, then subcontract-

ed part of it to McKenney. After Union Station became owner of the Depot, Union Station made two payments directly to McKenney—not to any intermediate entity— from proceeds of the DNR loan.

These factors, coupled with the Supreme Court's holding in *Vasquez* that the contractor there was an original contractor, lead us to the inescapable conclusion that McKenney was an original contractor with Union Station.

Our conclusion is consistent with *Jefferson County Lumber Co. v. Robinson,* 121 S.W.2d 209, 212 (Mo.App.1938), where we find this:

> It is settled law that where one not the owner of land contracts as though he were the owner for materials to put improvements on the land and afterwards acquires title to the land the materialman's lien attaches simultaneously with the acquisition of the title.

The above rule, together with *Vasquez,* confirms that had McKenney complied with the notice requirement of § 429.012, he would have been entitled to a mechanic's lien on the Depot as an original contractor with Union Station.

McKenney argues the "theory of equitable ownership" should not be used to defeat a mechanic's lien in that the purpose of the mechanic's lien statutes is to provide mechanics and materialmen an effective means of securing payment for labor and materials used to improve another's property.

As we view it, that theory is not being used to defeat McKenney's try for a mechanic's lien. On the contrary, the theory would entitle him to a mechanic's lien as an original contractor with Union Station had he given the notice required of original contractors by § 429.012.

McKenney also argues that whether he is an original contractor or a subcontractor must be determined as of the time he signed the contract with Union Station, and using the test in *Home Building Corp. v. Ventura Corp.,* 568 S.W.2d 769 (Mo. banc 1978), he is a subcontractor.

In *Home Building Corp.,* a developer owned unimproved land. The developer contracted with a municipal housing authority to

construct a housing project on the land and sell it to the housing authority when completed. The developer thereafter contracted with a supplier for modular housing units for the project. The supplier furnished the units, but was not paid the full amount due. The supplier sued for what it was owed and for a mechanic's lien on the project. At some point, the project was conveyed to the housing authority. The housing authority argued it was the equitable owner of the project when the supplier made its contract with the developer, hence the supplier was not an original contractor. As support for that theory, the housing authority cited *Vasquez*, 362 S.W.2d 588 (discussed earlier in this opinion).

The Supreme Court of Missouri in *Home Building Corp.* explained that *Vasquez* held an equitable owner, *exercising the rights of a proprietor in the land at the time a contract is made*, may be the owner thereof for purposes of the mechanic's lien statute. *Home Building Corp.*, 568 S.W.2d at 771. However, said the Supreme Court, it did not automatically follow that in the factual situation presented in *Home Building Corp.*, the developer was not the property owner for the purpose of determining whether the supplier was an original contractor. *Id.* Emphasizing that the developer, not the housing authority, was building the project and exercising dominion over the property when the supplier contracted to furnish the modular housing units, the Supreme Court held the supplier was an original contractor. *Id.* Nothing in *Home Building Corp.* suggests the Supreme Court intended to depart from or weaken *Vasquez.*

In the instant case, Union Station made the contracts with McKenney and Rainey, obviously anticipating ownership of the Depot would shortly be transferred from Historic Properties to Union Station. McKenney's work continued after Union Station acquired ownership, and Union Station paid McKenney on two occasions for his work. Inferably, at least some of the work for which McKenney was paid was done after Union Station acquired ownership. Factually, the instant case is closer to *Vasquez* than

to *Home Building Corp.* We hold *Vasquez* controls.

Finally, McKenney's contention that he was not an original contractor is at odds with the contract he signed. The contract states it is between the "Owner" (Union Station) and the "Contractor" (McKenney). Thus, on its face the contract is between an owner and an original contractor.

Unfortunately, McKenney's failure to satisfy the notice requirement of § 429.012 disqualifies him from a mechanic's lien. However, the record allows no other result.

Judgment affirmed.

FLANIGAN, P.J., and GARRISON, J., concur.

